**In the Matter of Jeffrey R. KILSON d/b/a Jeffrey R. Kilson Excavating and Kilson Excavating Company, Debtor.**

**Gilbert L. ROSENBAUM, Trustee, Plaintiff,**

v.

**Jeffrey R. KILSON, Defendant.**

**Bankruptcy No. 2–86–01266. Adv. No. 2–87–0085.**

United States Bankruptcy Court, D. Connecticut.

Feb. 19, 1988.

Gilbert L. Rosenbaum, Hartford, Conn., for trustee.

Joseph B. Collins, Springfield, Mass., for defendant.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

The trustee in a chapter 7 case objects in this adversary proceeding to the granting of a discharge to Jeffrey R. Kilson (the debtor) contending that the debtor knowingly and fraudulently made false oaths in or in connection with his bankruptcy case.[1] The debtor's post-trial brief raises two principal issues: (1) whether the debtor's alleged initial confusion and his later disclosure of the truth were sufficient evidence of his lack of fraudulent intent; and (2) whether the false oaths related to a material matter.

### II.

Testimony taken at a trial on November 18, 1987 and the case file established the following facts. The debtor, the sole proprietor of an excavating and contracting business, entered into an oral agreement in June 1986 with Robert Segalla to construct a concrete house foundation for Segalla. In exchange, Segalla agreed to transfer to the debtor or his wife a parcel of land (the land) valued at $4,000.00 and adjacent to the home owned by the debtor's wife. The debtor completed the work during October 1986, but Segalla had not yet conveyed the land prior to the debtor's chapter 13 bankruptcy petition filed on December 22, 1986.[2] The debtor's petition, schedules and statement of financial affairs, certified under penalty of perjury to be true and accurate, did not list an account receivable from Segalla, the existence of the agreement or the debtor's right to receive the land. The debtor converted his case to one under chapter 7 on February 13, 1987, and Gilbert L. Rosenbaum became the trustee in the case.

On June 23, 1987, at an examination of the debtor requested by the trustee pursuant to Bankr.R. 2004[3] (the June examination), the debtor denied under oath the existence of any agreement between himself and Segalla.[4] At a continued examination of the debtor, held on July 21, 1987 (the July examination), the debtor admitted the existence of the agreement with Segalla and testified as to the terms of the agreement and how it arose. On cross-examination by his attorney, the debtor stated that the reason he had denied the existence of the agreement at the June examination was that he had been confused by the questions posed to him. In addition, he stated that because he had never paid a sub-contractor

---

1. 11 U.S.C. § 727(a) (1982) provides:
   The court shall grant the debtor a discharge, unless—

   .     .     .     .     .

   (4) the debtor knowingly and fraudulently, in or in connection with the case—
   (A) made a false oath or account; . . . .

2. Segalla needed subdivision approval by town authorities before he could convey the land, and that approval had not been received.

3. Bankr.R. 2004 provides:
   (a) *Examination on Motion.* On motion of any party in interest, the court may order the examination of any entity.
   (b) *Scope of Examination.* The examination . . . of the debtor . . . may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor. . . .

4. "Q. Mr. Kilson, do you know a gentleman by the name Robert Segalla?
   A. Yes, I do.
   Q. Have you done foundation work for him?
   A. Yes, I have.
   Q. Does he still owe you for that foundation work?
   A. No, he doesn't.
   Q. Has he agreed to give you a parcel of real property for that?
   A. No, he hasn't.
   Q. You have no expectation of receiving a parcel of real estate then from Mr. Segalla?
   A. No, I don't."
   *Transcript of June 23, 1987 Examination* at 4.

who worked on the foundation, he believed he had no right to receive the land from Segalla. *Transcript of July 21, 1987 Examination* at 11–14.

At trial, the debtor testified that he had told his attorney about the existence of the agreement with Segalla. The attorney who prepared the debtor's bankruptcy petition was not called as a witness. The debtor's trial attorney stated that, if the attorney who prepared the petition were called to testify, he would testify that he does not recall the debtor advising him of the Segalla agreement.[5] Segalla, whose testimony confirmed the terms of the agreement between him and the debtor, stated that, upon demand, he was prepared to pay to the trustee the value of the land.

### III.

Section 727(a)(4)(A) of the Bankruptcy Code[6] is based upon § 14 of the Bankruptcy Act of 1898 (the Act), ch. 541, 30 Stat. 544 (1898). H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 *reprinted in* 1978 U.S. Code Cong. & Admin. News 6340 (House Report); S.Rep. No. 989, 95th Cong., 2d Sess. 98, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5884 (Senate Report). Section 14 of the Act, codified at 11 U.S.C. § 32, stated: "(c) The court shall grant the discharge unless satisfied that the bankrupt has (1) committed an offense punishable by imprisonment as provided under Section 152 of Title 18...." 11 U.S. C.A. § 32 (West 1979) (repealed 1978). Prior to its amendment in 1978, 18 U.S.C. § 152 stated: "Whoever knowingly and fraudulently makes a false oath or account in or in relation to any bankruptcy proceeding.... Shall be fined not more than $5,000 or imprisoned not more than five years, or both." 18 U.S.C.A. § 152 (West 1969).[7] Because the language under

§ 727(a)(4)(A) of the Code is so similar to the provisions for denying a discharge based upon a false oath under the Act, cases construing § 14(c)(1) are persuasive authority for the construction of § 727(a)(4)(A). *Semmerling Fence & Supply, Inc. v. Ramos (In re Ramos)*, 8 B.R. 490, 493 (Bankr. W.D.Wis.1981) ("[T]he law denying discharge due to a false oath remains the same under the Code as under the Act."); *cf. Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 552 (5th Cir.1987) (cases construing § 727(a)(2)(A)'s predecessor under the Act remain applicable).

### A.

The burden of proof in the instant matter is on the trustee. Bankr.R. 4005.[8] The debtor asserts that the trustee must prove his case by clear and convincing evidence. There is a split of authority among the bankruptcy courts as to whether the degree of proof required to sustain an objection to discharge based upon fraud is a fair preponderance of the evidence or the stricter standard of clear and convincing evidence. *Booth v. Booth (In re Booth)*, 70 B.R. 391, 394 (Bankr.D.Colo.1987) (collecting cases).

The Court of Appeals for the Second Circuit has not yet ruled on the degree of proof issue under § 727(a)(4)(A). Under the Act, the Court of Appeals had held that a plaintiff had to establish a *prima facie* case for denial of discharge. The burden then shifted to the debtor to establish lack of fraud. *EFA Acceptance Corp. v. Cadarette (In re Cadarette)*, 601 F.2d 648, 650 (2d Cir.1979); *In re Tabibian*, 289 F.2d 793, 795 (2d Cir.1961). The ultimate burden of proof was on the plaintiff and the degree of proof required was a fair preponderance of the evidence. *In re Slocum*, 22 F.2d 282, 285 (2d Cir.1927). In addition,

---

**5.** The attorney who prepared the petition and the schedules was the same attorney who represented the debtor at the June and July examinations.

**6.** *See* note 1.

**7.** The Bankruptcy Reform Act of 1978 amended 18 U.S.C. § 152 by striking out the phrase "bankruptcy proceeding" and replacing it with

the phrase "case under title 11". Pub.L. No. 95–598, Title III, § 314(a), (c), 92 Stat. 2676 (1978).

**8.** Bankr.R. 4005 provides:

At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection.

§ 14 of the Act was construed strictly against the party objecting to discharge, in accordance with the Act's policy of providing a debtor with a fresh start. *In re Tabibian,* 289 F.2d at 795. The legislative history of § 727(a)(4)(A) states, "The fourth ground for denial of discharge is the commission of a bankruptcy crime, though the standard of proof is preponderance of the evidence rather than proof beyond a reasonable doubt. These crimes include the making of a false oath or account...." *House Report* 384, 1978 U.S.Code Cong. & Admin.News 6340; *see also Senate Report* 98, 1978 U.S.Code Cong. & Admin.News 5884.

The debtor argues that the proper degree of proof under § 727(a)(4)(A) is clear and convincing evidence and the trustee does not contest this assertion in his brief. Regardless of which standard of proof is now required, I find that the trustee has, in fact, proven his case by clear and convincing evidence, for the reasons set forth below.

### B.

■ Under § 727(a)(4)(A), the trustee must prove that the debtor "knowingly and fraudulently" made a false oath or account. The Second Circuit held that under the Act, "knowingly and fraudulently" meant "an intentional untruth in a matter material to the issue which is itself material." *In re Robinson,* 506 F.2d 1184, 1187 (2d Cir. 1974); *In re Melnick,* 360 F.2d 918, 920 (2d Cir.1966) (*per curiam*); *In re Slocum,* 22 F.2d at 285. Several courts have applied this definition under the Code, *see, Federal Land Bank of Omaha v. Ellingson (In re Ellingson),* 63 B.R. 271, 276 (Bankr.N.D. Iowa 1986); *In re Gugliada,* 20 B.R. 524, 533 (Bankr.S.D.N.Y.1982); *Economy Brick Sales, Inc. v. Gonday (In re Gonday),* 27 B.R. 428, 433 (Bankr.M.D.La.1983); and I shall do likewise.

### C.

The debtor's attempt at the trial to fault his attorney for omitting information about the Segalla agreement from the schedules is implausible in view of the debtor's denial of the existence of the agreement at his June examination. In addition, the debtor's trial counsel represented in open court that, if called to testify, the attorney who prepared the debtor's schedules would deny receiving such information.

In *Schuholz v. Zahneis (In re Zahneis),* 75 B.R. 201 (Bankr.S.D.Ohio 1987), the debtor testified that his failure to list real estate sales commissions owed to him on prepetition sales, which sales were to close post-petition, was caused by his attorney's failure to list them. The court discredited this testimony because, *inter alia,* the debtor failed to provide any evidence to corroborate this explanation. *In re Zahneis,* 75 B.R. at 203-04. I find that the debtor concealed the Segalla transaction from his attorney and intentionally omitted it from his schedules.

### D.

The debtor's contention that he was confused about what he was being asked at the June examination is not persuasive. The question was, simply, whether Segalla had agreed to give the debtor a parcel of real estate. *See* note 4. It taxes credulity to suggest that the debtor did not understand what he was being asked. The debtor's testimony at the July examination and during the trial, that he answered "no" to the question of whether any agreement existed between himself and Segalla because he believed the existence of a claim by a sub-contractor meant that he had no claim against Segalla, appears to me to be an afterthought.

[T]he bankruptcy law imposes upon one seeking its benefits the positive duty to schedule for the benefit of creditors all his interest and property rights. It is the trustee and the creditors, not the bankrupt, who are charged with the responsibility of determining whether such right and interest are of value to the estate.

*Hannan v. Charness (In re Hannan),* 127 F.2d 894, 897 (7th Cir.1942); *see also Morris Plan Industrial Bank v. Finn,* 149 F.2d 591, 592 (2d Cir.1945) (*per curiam*). I find that the debtor knowingly made a

false oath when he testified at the June examination for the purpose of shielding the existence of the agreement with Segalla from his creditors.

### E.

■ The debtor correctly argues in his brief that although a later disclosure does not expunge a prior false oath, a debtor's disclosure of information previously omitted from schedules is some evidence of innocent intent. In *In re Tabibian*, the court set forth the rule that "[I]n determining the bankrupt's state of mind, the referee was entitled to consider the later disclosure as some evidence of innocent intent." *In re Tabibian*, 289 F.2d at 797; *see also, In re Cadarette*, 601 F.2d at 652; *Zangen v. Glickman (In re Glickman)*, 64 B.R. 616, 618 (Bankr.S.D.Fla.1986). The question presented here is whether the debtor's disclosure at the July examination is sufficient evidence of innocent intent such that this court should find that the debtor did not possess fraudulent intent when he made his false oath in the submission of erroneous schedules and during the June examination. Fraudulent intent may be proven by inference from the facts and circumstances of a case. *Williamson v. Fireman's Fund Insurance Co.*, 828 F.2d 249, 252 (4th Cir.1987). The inference of innocent intent is slight where the debtor has changed his testimony or amended his schedules after the trustee or creditors have already discovered what the debtor sought to hide, or when the change in testimony or amended schedules are precipitated by the trustee's persistence in uncovering the truth. For example, in *Allard v. Hussan (In re Hussan)*, 56 B.R. 288, 292–93 (Bankr.E.D.Mich.1985), the court held that the debtor's amendment to his schedules did not expunge his false oath where the amendment was not made until after giving false testimony and after the trustee had already filed his objection to discharge. Similarly, in *In re Cadarette*, the debtor failed to disclose certain transfers on his schedules and gave misleading testimony at the first meeting of creditors. The debtor amended his schedules after a creditor questioned his fiancée about the transfers. The court held that the discharge should be denied, and that the amendment to the schedules was not evidence of innocent intent. *In re Cadarette*, 601 F.2d at 652.

■ By the time the debtor disclosed the agreement in the July examination, the trustee obviously knew that the schedules omitted an asset and that the debtor had lied during the June examination. The present situation may be contrasted with *In re Tabibian*, in which the debtor made a spontaneous disclosure at the first meeting of creditors. *In re Tabibian*, 289 F.2d at 797. Here, the debtor's disclosure came too late and only after the trustee already knew the substance of the agreement with Segalla and had persisted at uncovering what the debtor sought to conceal.

### F.

■ The debtor finally argues that assuming that he made a false oath, his oath did not concern a matter material to the estate. In support of this argument, the debtor contends in his brief that the amount owed by Segalla is only $4,000.00, the debtor listed prepetition accounts receivable of approximately $191,000.00, and, therefore, "the amount of that claim was extremely small in relationship to the amount of the Debtor's conventional accounts receivable." *Debtor's Brief* 5. This argument is unavailing. The sum of $4,000.00 is neither minor nor inconsequential. Furthermore, the requirement that in order to deny a discharge a false oath must relate to a material matter does not necessarily require that creditors be prejudiced by the falsity. *In re Robinson*, 506 F.2d at 1188; *In re Gugliada*, 20 B.R. at 533. A matter is material if it is pertinent to the discovery of assets. *In re Ramos*, 8 B.R. at 495.

> This court has always regarded statements made during examination of a bankrupt to be "serious business".... "[A] discharge is a privilege granted the honest debtor and is not a right accorded all bankrupts." In any judicial proceeding concerned with establishing the truth, those who testify must be under

an obligation to speak truthfully at all times.

*In re Robinson,* 506 F.2d at 1189. (citations omitted). I find that the debtor's false oaths did pertain to a matter material to the estate.

### G.

■ There is ample authority that the debtor's oaths were made in or in connection with a bankruptcy case. Statements made in a petition and schedules are covered by § 727(a)(4)(A), as are statements made in first meetings of creditors and in Bankr.R. 2004 examinations. *See, e.g., Pohl Construction Co. v. Waddle (In re Waddle),* 29 B.R. 100, 103 (Bankr.W.D.Ky. 1983); *Pigott v. Cline (In re Cline),* 48 B.R. 581, 584 (Bankr.E.D.Tenn.1985).

### IV.

The trustee has established, by clear and convincing evidence, each and every element necessary for sustaining his objection to the debtor's discharge. The debtor knowingly and fraudulently, in or in connection with his bankruptcy case, made false oaths. Accordingly, his discharge must be, and hereby is, denied.