**In re Rowena GARCIA, Clyde Butler, Debtors.**

**Northeast Alliance Federal Credit Union, Plaintiff,**

**v.**

**Rowena Garcia, Clyde Butler, Defendants.**

**Bankruptcy No. 96–31786.**

**Adversary No. 96–3185.**

United States Bankruptcy Court, D. Connecticut.

April 11, 2001.

---

Rowena M. Garcia, Branford, CT, pro se.

Clyde A. Butler, Branford, CT, pro se.

JoAnn C. Silvia, Eisenberg Anderson Michalik & Lynch, New Britain, CT, for creditor.

**MEMORANDUM OF DECISION ON AMENDED COMPLAINT, DEFENDANTS' COUNTERCLAIMS, AND RELATED MATTERS**

ALBERT S. DABROWSKI, Bankruptcy Judge.

## I. INTRODUCTION

In this adversary proceeding, the Plaintiff seeks to shield from discharge a debt owed by the Debtor–Defendants by denial of the general discharge of Bankruptcy Code Section 727. As more fully explained hereafter, the Plaintiff's objection to discharge shall be overruled, as this Court finds after trial such objection to be meritless, frivolous, and filed for improper purposes. In light thereof, the Court, on its own initiative, directs all counsel for the Plaintiff to show cause why they should not be sanctioned pursuant to Fed. R. Bankr.P. 9011(b)(1), Title 28, United States Code, Section 1927, and the inherent power of the Court.

In addition, at the commencement of trial, and without prior notice to the Defendants or the Court, the Plaintiff abandoned an attempt to except the subject debt from discharge pursuant to Code Section 523. In connection with this abandoned endeavor the Court schedules further proceedings on the Defendants' third counterclaim to determine their entitlement to costs and/or attorney's fees pursuant to Section 523(d).

Finally, the Court denies the Defendants' first and second counterclaims brought pursuant to Code Sections 362 and 547, respectively.

## II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I), (J).

## III. PROCEDURAL AND FACTUAL BACKGROUND

On May 31, 1996, Rowena M. Garcia and Clyde A. Butler (hereafter and heretofore,

the "Debtors" or "Defendants"), commenced this bankruptcy case by filing a joint voluntary petition under Chapter 7 of the United States Bankruptcy Code. Schedules and Statements required by Rule 1007(b) of the Federal Rules of Bankruptcy Procedure, discussed in detail hereafter, were filed by the Debtors simultaneously with their voluntary petition. The Debtors filed Amendments to Schedules C, I and J, and their Statement of Financial Affairs, on May 14, 1998.

On October 24, 1996, Northeast Federal Credit Union (hereafter, the "Plaintiff"), initiated the instant Adversary Proceeding through the filing of a one-count Complaint captioned *Complaint to Determine Dischargeability of A Debt* (hereafter, the "Complaint"), pursuant to Section 523.[1]

On December 2, 1996, the Defendants filed an Answer, in which they delineated three "counterclaims" for (i) an alleged violation of Section 362 (hereafter, the "First Counterclaim"),[2] (ii) a "preference" allegedly received by the Plaintiff pursuant to Section 547 (hereafter, the "Second Counterclaim"),[3] and (iii) costs and attorney's fees upon an allegation that the instant adversary proceeding was "frivolous" and "not substantially justified" (hereafter, the "Third Counterclaim").[4]

On March 6, 1997, purportedly due to the Debtors' failure to amend their bankruptcy petition and schedules as they apparently had represented, the Plaintiff filed a *Motion for Permission to Amend Complaint* (hereafter, the "Motion to Amend"), Doc. I.D. No. 12.[5] An Order

---

1. The Complaint failed to cite the applicable subsection of Section 523. Under the facts alleged, however, the only possible applicable subsection is 523(a)(2)(B), which provides:

 (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

 * * * * * *

 (2) for money, property, services or an extension ... of credit, to the extent obtained by—

 * * * * * *

 (B) use of a statement in writing—
 (i) that is materially false;
 (ii) respecting the debtor's or an insider's financial condition;
 (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
 (iv) that the debtor caused to be made or published with intent to deceive.

2. The Defendants' First Counterclaim seeks the return of $200.00 allegedly "set off" against their account by the Plaintiff postpetition in violation of "Section 362." This counterclaim—initially drafted by the Debtor's former counsel—fails to plead either a "wilful" violation of the automatic stay of Section 362(a) under Section 362(h), or an avoidable set-off under Section 522(h).

3. The Defendants' Second Counterclaim seeks the return of $600.00 allegedly "set off" by the Plaintiff against their account within the 90 days prior to the petition date. This counterclaim—initially drafted by the Debtor's former counsel—fails to plead an avoidable set-off under Section 522(h).

4. The Third Counterclaim tracks the language of Section 523(d), which provides: "If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was *not substantially justified*, except that the court shall not award such costs and fees if special circumstances would make the award unjust." 11 U.S.C. § 523(d) (1996) (emphasis supplied).

5. In the Motion to Amend it was alleged, *inter alia*, that pursuant to a Rule 2004 Examination of the Debtors conducted on September 26, 1996, without their counsel present, they "confirmed that their Chapter 7 Bankruptcy petition was replete with inaccuracies," ¶ 3, and "represented... that the petition would be amended to correct any alleged errors." ¶ 5. Based on the latter representation the Plaintiff asserts it initially forewent an asser-

granting the Motion to Amend entered on April 24, 1997. An *Amended Complaint to Determine Dischargeability of Debt and Objection to Discharge* (hereafter, the "Amended Complaint"), Doc. I.D. No. 20, added a Second Count under Section 727(a)(4)(A) [6]. On June 4, 1997, the Defendants filed an Answer to the Amended Complaint which contained counterclaims equivalent to those in their earlier Answer to the Complaint.

### A. The Appearances of Various Counsel

#### 1. *Plaintiff's Counsel*

The Plaintiff was initially represented by Attorney JoAnn Centrilla–Silva of the law firm of Eisenberg, Andersen, Michalik and Lynch, who signed and filed the Complaint and the Amended Complaint. On July 11, 1997, almost a year after a September 26, 1996 Rule 2004 examination of the Debtors, Attorneys Joseph M. Tobin and Mary Elizabeth Oppenheim, of the law firm of Tobin and Melien (hereafter, the "Tobin Law Firm"), filed Notices of Appearance (as substitute counsel) on behalf of the Plaintiff, and simultaneously filed a motion requesting (i) "additional time to review and prepare for [the] trial" (then

scheduled for July 28, 1997), and (ii) a "pretrial [conference] for discussions regarding possible settlement of this matter." *Motion for Continuance of Trial and Request for Pretrial,* Doc. I.D. No. 35. That motion was granted by Order dated August 6, 1997, and a pretrial conference was scheduled for September 15, 1997.

At the pre-trial conference held September 15, 1997, Attorney Gregory Lattanzy, then with the Tobin Law Firm, appeared in open court and represented that he (i) "replaced Attorney Mary Oppenheim," [7] (ii) "just picked up the file for the first time," and (iii) desired to speak with the Defendants with the assistance of the Court to attempt to settle the matter.[8] The Court observed, that although not denominated as such, Count Two of the Amended Complaint appeared to be brought pursuant to Section 727—to which counsel responded, "I believe so." When asked if he was familiar with Local Bankruptcy Rule 7041–1, *see* D. Conn. LBR 7041–1,[9] and its effect on settlement of a Section 727 action, counsel responded, "not exactly". Thereafter, the parties were provided with a copy of Local Bankruptcy Rule 7041–1 by the Court, met outside the presence of the Court, and then reported a

---

tion of a Complaint Objecting to Discharge of the Debtor", but instead "filed a Complaint to Determine Dischargeability of Debt." ¶ 6.

**6.** Although the Amended Complaint itself is devoid of any reference to a statutory basis for Count Two, the Motion to Amend concludes with a prayer to add a second count pursuant to Section 727(a)(4)(A).

**7.** On September 9, 1997, Attorney Mary Oppenheim filed a *Motion to Withdraw Appearance,* Doc. I.D. No. 40, representing that she was no longer employed by the Tobin Law Firm and that "Joseph Tobin has an appearance on file for [the Plaintiff]." It does not appear of record that this Motion was scheduled for a hearing or otherwise acted upon.

**8.** Observations made herein regarding the September 15, 1997 pretrial conference are derived from the Court's recollection, aided by a review of the tape of the proceedings of that date. The Docket Sheet entry for the pretrial conference simply reflects "Both parties agreed that they will confirm this matter at a later time if necessary. They are going to try to reach an agreement."

**9.** D.Conn LBR 7041–1(b) provides: "In the event of a dismissal of an adversary proceeding to deny discharge of a debtor, no discharge shall be granted unless the debtor shall file an affidavit and the debtor's attorney shall file a statement that *no consideration has been promised or given, directly or indirectly,* for any such dismissal." (emphasis added).

"fruitful" discussion and "no need for involvement by the Court." Trial was scheduled for December 8, 1997, and subsequently rescheduled to May 18, 1998.

On May 12, 1998, the week before trial, Attorney Stephen Oppenheim of the Tobin Law Firm filed a *Notice of Appearance,* Doc. I.D. No. 43, on behalf of the Plaintiff "in addition to the appearances on file."

### 2. *Debtors' Counsel*

The Debtors were initially represented by the law firm of Kaligian & Sutton. However, on January 8, 1997, Kaligian & Sutton filed a *Motion to Withdraw as Counsel to Debtor,* Doc. I.D. No. 18, asserting a "break down" [10] in their relationship with the Debtors. Withdrawal was authorized by the Court January 29, 1997. Incident to the September 15, 1997 pretrial conference, Defendant Butler explained that he and his spouse had dismissed Kaligian & Sutton because that firm "made numerous errors in the initial filing [and] we didn't feel confident in continuing with them." The Defendants appeared at trial *pro se.*

### B. The Trial

At the commencement of the trial, newly appearing Plaintiff's attorney, Stephen Oppenheim, was not present at the call of the proceeding, which prompted the following colloquy with the Court:

> THE COURT: First of all, Mr. Oppenheim, the Court, the courtroom personnel, Ms. Garcia and Mr. Butler were all here at 10:00. You were not, and that is because?
>
> MR. OPPENHEIM: I apologize. I had a meeting with my client beforehand.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> THE COURT: So you're—this case is two years old. You're meeting with the client preparing a motion not five minutes before the trial starts.
>
> MR. OPPENHEIM: Well, all I can say, Your Honor, is this case has gone through a number of other counsel in my office. It has also been through—was with another firm.
>
> The case was given to me recently and I've done my best to prepare as best I could. I spent all weekend preparing and I had—
>
> THE COURT: All right.
>
> MR. OPPENHEIM: —a meeting set up with the client this morning.

Tr. May 18, 1998 at 2, 4.

Following this exchange, without prior notice to the Court or the Defendants,[11] counsel for the Plaintiff announced the intention to "pursue this case according to Section 727 only, and . . . not as to 523", Tr. at 9, and moved to withdraw Count One. The Court granted the motion, and thereafter received the testimony of witnesses and admitted into evidence a series of exhibits as to the surviving Section 727 Count of the Amended Complaint. At the conclusion of the trial, the Court, pursuant to Fed.R.Evid. 614,[12] determined it appro-

---

**10.** The Motion attached a letter dated December 18, 1996, from the Debtor Butler to Attorney Kaligian stating, *inter alia,* "we have decided to dismiss you and your firm."

**11.** Tr. May 18, 1998 at 9–10. This proceeding was reported "ready" pursuant to paragraph 6 of the *Modified Pretrial Order,* Doc. I.D. No. 24, which required the Plaintiff to "ascertain whether it is likely that the trial will proceed as scheduled and [to] report that information to the judge's chambers the Wednesday before the trial date."

**12.** Fed. R. Evidence 614(a) provides: "(a) Calling by Court. The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."

priate to call as a witness the Debtors' former bankruptcy attorney.[13] Further proceedings followed, and on June 1, 1998, the Court received the testimony of the Debtors' former counsel, Attorney Brian Kaligian, and considered further argument. The following additional facts emerge from the files and records of the Debtors' bankruptcy case and this adversary proceeding, and the evidence presented at trial.

## C. The Loans

In August, 1992, the Defendant Garcia borrowed the sum of $10,000 .00 from the Plaintiff, and incident thereto executed, *inter alia,* a "Loanliner Application and Credit Agreement", disclosing detailed written information regarding her financial condition.

Eight months later, in April, 1993, the Defendant Garcia requested an additional $7,090.00 loan, and offering her husband as a "co-signor". The requested credit was granted, and when consolidated with the initial loan, obligated the Defendant Garcia to repay, at that time, a principal balance of $15,000.00 at an annual rate of 15% in monthly installments of $293.50. When

Defendant Butler guaranteed his wife's consolidated loans, he executed, *inter alia,* his own Loanliner Application, providing detailed personal, employment, and reference information. Notably, however, the debt portion of the Loanliner Application signed by Defendant Butler was simply filled in with the printed acronym, "SSA." [14]

## D. The Alleged False Statements

The Debtors' bankruptcy petition, schedules, and related documents were filed with the aid of experienced bankruptcy counsel.[15] Following an initial meeting with the Debtors, and pursuant to procedures then in effect in his office, the Debtors' attorney forwarded computer-generated papers and schedules to the Debtors for the purpose of soliciting additional information, review, and signature.[16] The Schedules, when forwarded to the Debtors and, as explained hereafter, when filed with the Court, were not wholly accurate, and varied as to completeness. Schedules A, B, C, D, E, F, G and H were detailed and largely complete. Indeed, Schedule F details 21 creditors, including three [17] not

13. At the trial, both Debtors testified—consistent with their Rule 2004 examination—that their original bankruptcy schedules were replete with inaccuracies as alleged. However, the Debtors' vigorously maintained they did not act with fraudulent intent. They further testified the subject schedules were filed through their former bankruptcy counsel who they believed had full knowledge of the inaccuracies and told them "not to worry about it" or words to that effect. Counsel for the Plaintiff neither questioned nor called the Debtors' former attorney at trial because he believed "the ultimate responsibility —— falls with the debtors...." Tr. May 18, 1998 at 151.

14. It is undisputed that "SSA" means, and was intended to mean, "Same as Applicant."

15. Attorneys Kaligian and Sutton regularly appear before this Court. Attorney Kaligian's

admittedly "embarrassing" conduct in this proceeding is not representative of his competence in other matters.

16. The Debtors' attorney testified that he always explained this procedure and its purpose to clients during the initial meeting but acknowledged that "its possible [this one] slipped through the cracks." Tr. June 1, 1998 at 56.

17. Discover Card ($3,148.00), Ford Citibank Mastercard ($2,613.00) and John Deere Credit ($2,675.00). Defendant Garcia's failure to particularize these three creditors on the relevant loan applications formed the basis, in part, of the Plaintiff's claim in the abandoned Section 523 count that Defendant had submitted material false information which warranted a determination of non-dischargeability. *See* Complaint, ¶ 12.

particularized on Defendant Garcia's Loanliner Application and Credit Agreement.

However, Schedule I listed "Total Monthly Income" of "$4.33," and Schedule J listed "Total Monthly Expenses" of "$1.00." These figures served as focal points of the Plaintiff's allegation that the Debtors "knowingly and fraudulently made a false oath by falsely representing their *income, expenses,* asset s and finances." Amended Complaint, Count Two, ¶ 19 (emphasis added). The figures reported on Schedules I and J are plainly and admittedly inaccurate. According to the Debtors' former attorney, he anticipates the receipt of income information on a weekly basis, and thus presets his computer software to multiply the Schedule I figures provided by debtors by "4.33" to achieve automatically a monthly income result. Similarly, Schedule J assumes monthly information will be inserted and is preset with a multiplier of "1.00".

The Debtors signed the Petition,[18] Schedules and Statements, and returned the same to their attorney, who, without review, filed them with this Court. In this connection counsel testified: "I'm ashamed of the document that got filed.... I apologize to the Court .... I'm embarrassed... that was a poorly drafted, sloppy filing." Tr. June 1, 1998 at 55, 59. The Debtors, when confronted with their Income and Expense Schedules at a Rule 2004 Examination, freely admitted and confirmed that such documents were "replete with inaccuracies."

## IV. DISCUSSION

### A. The Amended Complaint as Prosecuted—Section 727(a)(4) (False Oaths).

The Amended Complaint, as prosecuted,[19] is based solely upon 11 U.S.C. § 727(a)(4),[20] and alleges the Debtors knowingly and fraudulently made a false oath in connection with these bankruptcy proceedings. Specifically, the surviving Second Count incorporates by reference the first 16 paragraphs of the withdrawn First Count, and then more specifically alleges:

(17) The Debtors Chapter 7 Bankruptcy petition is replete with inaccuracies.

(18) ... The Debtors' [Rule 2004] testimony contradicted the information provided in their Chapter 7 Bankruptcy Petition. The Debtors alleged that their income, expenses, and assets were not accurately listed on their petition. In addition, the Debtors' Statement of Financial Affairs did not reflect any income.

(19) The Debtors knowingly and fraudulently made a false oath by falsely representing their income, expenses, assets and finances.

Section 727 "imposes an extreme penalty for wrongdoing ... [and] as such it must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt'". *E.g., In re Chalasani,* 92 F.3d 1300, 1310 (2nd Cir.1996). The party objecting to the granting of a discharge bears the ultimate burden of persuasion in an adversary pro-

---

18. The Debtors' signatures appear directly under the declaration "[w]e declare under penalty of perjury that the information provided in this petition is true and accurate."

19. As noted *supra,* the Plaintiff withdrew its original Section 523 Count at the time of trial.

20. Code Section 727(a)(4) provides that

(a) [t]he court shall grant the debtor a discharge, unless—
(4) the debtor knowingly and fraudulently, in or in connection with the case—
(A) made a false oath or account;

ceeding pursuant to Section 727(a). Fed. R. Bank. P. 4005.

■■■ In order to support a court's denial of discharge under 11 U.S.C. § 727(a)(4)(A), the Plaintiff must establish that:

(i) the debtor made the statement under oath;

(ii) such statement was false;

(iii) the debtor knew the statement was false;

(iv) *the debtor made the statement with fraudulent intent;* and

(v) the statement related materially to the bankruptcy case.

*E.g., In re Aiello,* 173 B.R. 254, 257 (Bankr.D.Conn.1994) (quoting *In re Wolfson,* 139 B.R. 279, 287–88 (Bankr.S.D.N.Y. 1992)) (emphasis supplied). *See also In re Maletta,* 159 B.R. 108, 112 (Bankr.D.Conn. 1993). Statements made in a bankruptcy petition and/or schedules are covered by § 727(a)(4), as are statements made during Bankruptcy Rule 2004 examinations. *See Maletta, supra,* at 112; *In re Kilson,* 83 B.R. 198, 202 (Bankr.D.Conn.1988).

■■■ The objecting creditor must prove actual fraud. *Kilson, supra,* at 202. Once the objecting creditor meets its burden of proof and has produced persuasive evidence of a false statement, the burden of production shifts to the debtor to come forward with some credible explanation for a false statement on the schedules. *E.g., Maletta, supra,* at 112; *In re Arcuri,* 116 B.R. 873, 884 (Bankr.S.D.N.Y.1990).

■■■ A statement is not fraudulent within the meaning of the false statement exception to discharge simply because it is false. *In re Arcuri,* 116 B.R. at 882. Knowingly and fraudulently" means "an intentional untruth in a matter material to the issue which is itself material." *Kilson, supra,* at 202 (quoting *In re Robinson,* 506 F.2d 1184, 1187 (2d Cir.1974)). The court

may consider the debtor's education, business experience, and *reliance on counsel* when evaluating the debtor's knowledge of a false statement. *Id.*

During argument Defendant Butler fairly and persuasively characterized the Debtors' state of mind in connection with the alleged false oaths respecting the Debtors' Schedules I and J:

"[W]e knew very well that we don't make $4.33, and if we wanted to defraud, we could have done a lot better job in trying to hide information, than doing this.

[O]bviously, submitting a document like this is stupid... it shows the level of stupidity on my part, not necessarily fooling courts... The bottom line is we did not intentionally... commit fraud and [want] to hide this information.

As bad a job as I've done in representing myself... I'm not that stupid."

Tr. June 1, 1998 at 97, 99.

■■■ The Court credits the testimony of the Defendants and finds that the Plaintiff has not established by a preponderance of the evidence that "inaccuracies" in the Debtors' Schedules and/or false oaths in connection with the case, were made with fraudulent intent. This finding is applicable to the admitted inaccuracies in Schedules I and J, as well as to all other alleged false oaths and statements. For example, at the commencement of the bankruptcy case the Debtors scheduled jewelry with a value of $1,000.00; at the 2004 Examination Defendant Garcia purportedly testified that she owned an engagement ring and necklace worth approximately $5,000.00; yet on the Loanliner Applications the Defendant Garcia listed jewelry totaling $10,000.00.

Notwithstanding these valuation inconsistencies, the Court is fully satisfied that

the requisite fraudulent intent of Section 727(a)(4) was not established, to the extent alleged.[21] The Debtors' testified that they believed they were told by their counsel that the documents sent to them were just "perfunctory matters" and to "just sign this petition" and return the same without modification. Although the Debtors' former counsel denied giving such advise, the Court finds and concludes that the Debtors misinterpreted or misunderstood advice given to them by their former attorney and/or his staff.

## B. Sanctions.

■ Ordinarily a determination of a lack of fraudulent intent would end a discharge objection proceeding. However, the lack of fraudulent intent in the instant matter is so apparent that the Plaintiff and its counsel cannot escape the clear inference, as argued by the Defendants,[22] that the Complaint was amended and prosecuted for improper purposes, i.e., to coerce a settlement, and continue attempts to coerce a settlement, with the Debtors. Behavior of this nature is precisely the kind of conduct which Local Bankruptcy Rule 7041–1(b) seeks to arrest. In view of the foregoing, the Court turns to consider appropriate sanctions against those responsible for the unwarranted proceeding.

■ Parties subjected to potential sanctions must receive specific notice of the conduct alleged to be sanctionable and the authority under which the sanctions are being considered. See, e.g., In re Ames Dept. Stores, 76 F.3d 66, 70 (2d Cir.1996) ("In as much as different sanction mechanisms—such as Fed.R.Civ.P. 11 (and its counterpart in bankruptcy proceedings, Bankruptcy Rule 9011), 28 U.S.C. § 1927, or the court's inherent authority to curtail abusive litigation practices—involve different substantive standards, we have repeatedly required courts to specify the source of their authority to impose sanctions." (citations omitted))[23]. This Memorandum of Decision shall serve as the requisite notice for imposition of sanctions in this adversary proceeding.

### 1. Bankruptcy Rule 9011.

■ A Bankruptcy Court has the authority, under Bankruptcy Rule 9011, to impose sanctions on any party or attorney

**21.** The Section 727 Count of the Amended Complaint incorporates by reference Paragraphs 1–16 of the abandoned Section 523 Count—a Count focused almost exclusively on false statements made in the Loan Applications. Paragraph 10 thereof specifically asserts that Exhibits A and C (Loan Applications) are materially false, citing as a basis therefor the valuations in the Debtors' bankruptcy Schedules. False statements made in pre-petition loan applications are not made "in connection with the [bankruptcy] case", and thus do not form a proper basis for a claim under Section 727(a)(4); and of course Paragraph 10 of the Complaint cannot be fairly read to allege that the bankruptcy Schedules were false.

**22.** Tr. June 1, 1998 at 100.

**23.** For example, significant differences exist between Rule 11 and Section 1927.

For instance, Rule 11 sanctions may be imposed on both counsel and client, while § 1927 applies only to counsel. A Rule 11 violation must be based on signed pleadings, motions, or other papers. Section 1927 violations do not hinge on the presence of a paper. Rule 11 may not be employed to sanction obnoxious conduct during the course of the litigation; whereas § 1927 applies to the unreasonable and vexatious multiplication of court proceedings. Rule 11 requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers, but § 1927 requires more: subjective bad faith by counsel.
United States v. Int'l Brotherhood of Teamsters, 948 F.2d 1338, 1345–1346 (2d Cir. 1991).

who, *inter alia*, signs, or later advocates, a document that is interposed for an improper purpose. Fed. R. Bankr.P. 9011. The pertinent section of Rule 9011 reads:

(b) *Representations to the Court.* By presenting to the Court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) *Sanctions.* If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to conditions stated below, impose an appropriate sanction on the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

The preliminary requirement of Rule 9011 is the existence of a signed pleading, motion, or other document. *E.g., Adduono v. World Hockey Assoc.,* 824 F.2d 617 (8th Cir.1987). This requirement is met in this proceeding by the signed Amended Complaint.

Violations of Rule 9011 are determined by applying an objective standard of reasonableness under the circumstances. *E.g., In re KTMA Acquisition Corp.,* 153 B.R. 238, 248 (Bankr.D.Minn. 1993). When analyzing whether a document has been filed for improper purposes under Rule 9011, "the signer's conduct is judged objectively looking at the facts of the case, the reasonableness of the pleading and the circumstances of the filing." *Id.* at 265. Even if a party submits a pleading that is well grounded in the law, "the plain language of Rule 9011 provides that a party can be sanctioned for filing a factually and legally well-grounded paper for improper purposes." *Id.* at 266.

When a Court finds that a violation has occurred, as this Court preliminarily has determined, sanctions against those responsible for the violation are mandatory.[24] This Court is therefore under a duty to impose sanctions if, upon notice and opportunity to be heard, it continues to appear that upon any responsible examination it would have been blatantly obvious to any reasonable person that no fraudulent intent attended the admitted income, expense and finance "inaccura-

---

**24.** Rule 9011 intentionally tracks certain language in Fed.R.Civ.P. 11. *In re Ciancioso,* 187 B.R. 438, 442 (E.D.N.Y.1995). In 1993, Rule 11 was amended to give the court discretion to impose sanctions in the event of a violation. Those amendments were not made in Bankruptcy Rule 9011, therefore sanctions are mandatory upon a violation in the Bankruptcy Court. *Id.*

cies," and/or if the Amended Complaint were interposed for an improper purpose.

As detailed herein it presently appears to the Court that the Complaint was amended (by the addition of the Section 727 Count), and "later advocated" and prosecuted, for an improper purpose, that is to harass the Debtors, and coerce them toward settlement, with the effect of causing unnecessary delay and needless increase in the cost of litigation. It further presently appears to the Court that the Plaintiff's claims and legal contentions in the Amended Complaint that the Debtors' "knowingly and fraudulently made a false oath by falsely representing their income, expenses... and finances,"[25] Amended Complaint at ¶ 19, were not warranted by existing law, or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law, and the aforesaid claims and legal contentions were without evidentiary support and not likely to have evidentiary support. Therefore, further inquiry to determine if it is warranted for the Court to impose sanctions upon (i) the Plaintiff, as a party "responsible" for improper conduct, under the authority of Fed. R. Bankr.P. 9011(c), and/or (ii) upon the Plaintiff's counsel under Fed. R. Bankr.P. 9011(b)(1), (2) and/or (3), is warranted.

### 2. Title 28, United States Code, Section 1927.

Section 1927 of Title 28, United States Code, provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

By its terms, Section 1927 addresses unreasonable and vexatious multiplications of proceedings; and "it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics." *United States v. Int'l Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991)." "[A]n award under [Section] 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose...." *Id.* (citations and internal quotation marks omitted). An award pursuant to Section 1927 "may be imposed only against the offending attorney; clients may not be saddled with such awards." *Id.*

Because it presently appears to the Court that the Plaintiff's attorneys' actions in initiating and prosecuting the Complaint, as amended, were so completely without merit as to require the conclusion based on the present record, that such actions were undertaken for improper purposes, to harass the Debtors, and coerce the Debtors toward settlement, by multiplication of the proceedings unreasonably and vexatiously, further proceedings, upon the notice herein, to determine, pursuant to 28 U.S.C. § 1927, whether to impose appropriate sanctions on counsel, are appropriate.

### 3. Inherent Power of the Court

Finally, a court has an additional means at its disposal for sanctioning improper conduct—its inherent power.

This power stems from the very nature of courts and their need to be able " 'to manage their own affairs so as to

---

**25.** The word, "assets", is intentionally omitted.

achieve the orderly and expeditious disposition of cases.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1388–89, 8 L.Ed.2d 734 (1962)). One component of a court's inherent power is the power to assess costs and attorneys' fees against either the client or his attorney where a party has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975) (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)). Sanctions imposed under a court's inherent power—commonly known as the bad faith exception to the "American Rule" against fee shifting—"depend[ ] not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation." *Chambers*, 111 S.Ct. at 2137.

*United States v. Int'l Brotherhood of Teamsters, supra*, 948 F.2d at 1345.

 Under standards well-established in this Circuit a trial court's inherent power must be exercised with restraint and not utilized unless the challenged conduct is "entirely without color" and "motivated by improper purposes." *Milltex Industries Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34, 35 (2d Cir.1995).

The improper motivation already detailed herein was compounded by the status of the Plaintiff's target—*pro se* Debtors, themselves victimized by their own former counsel. Plaintiff's counsel pursued their vulnerable targets with abandon, alleging reckless, unfounded and patently preposterous grounds for discharge denial within a poorly drafted Amended Complaint absent even citation to statuto-ry basis. Indeed, one appearing counsel was not certain of the statutory basis for Count Two of the Amended Complaint. Attempts to "settle" the matter with, and to the prejudice of the *pro se* Debtors, were pursued, first, without knowledge of the Local Bankruptcy Rules, and then, after receipt of a copy of Local Bankruptcy Rule 7041 from the Court, contrary to the spirit of and in apparent disregard for the Rule. Various appearing counsel handed off responsibility for this proceeding on the eve of critical court proceedings like the proverbial "hot potato." One counsel, who elected to appear late for the trial because he had not yet met with his client, may have convinced the Plaintiff to withdraw the Section 523 Count in an apparent and miscalculated attempt to avoid triggering liability under the Defendants' Third Counterclaim. The collective effect of such conduct impeded and obstructed the ability of this Court to manage its affairs so as to achieve the fair, orderly and expeditious disposition of cases.

For these reasons it presently appears that the conduct of the Plaintiff and its counsel in this proceeding, from the filing of the Amended Complaint through trial, was "entirely without color" and "motivated by improper purposes." Accordingly, further proceedings upon notice herein, to determine whether to impose sanctions on the Plaintiff and its counsel, pursuant to the inherent power of the Court, are warranted.

**B. The Defendants' Counterclaims.**

 The Defendants have neither plead nor proved at trial meritorious grounds for relief on their First or Second Counterclaims. In addition, with regard to the Second Counterclaim, the Debtor–Defendants lack standing to avoid a prepetition transfer since only a Trustee is authorized to bring such an action. *See* 11

U.S.C. § 547(b) ("... the *trustee* may avoid any transfer of an interest of the debtor in property....").[26] Accordingly, judgment shall enter in favor of the Plaintiff on the Defendants' First and Second Counterclaims.

The Court now turns to the Defendants' Third Counterclaim, which it construes as a request for relief under Bankruptcy Code Section 523(d), and which provides in full as follows:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding *if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.*

11 U.S.C. § 523(d) (1996) (emphasis supplied).

The Complaint, and Count One of the Amended Complaint, sought a determination of non-dischargeability of a consumer debt allegedly owed to the Plaintiff by the Debtors. That cause of action was withdrawn by the Plaintiff on the day of trial, and the Debtors have now received their discharge. In their Third Counterclaim the Defendants track the language of Section 532(d) and allege, *inter alia*, that "[t]he position of the Plaintiff in filing this adversary proceeding is not substantially justified" and "... is frivolous and is an attempt to procure fund[s] from the debtor by way of settlement."

The Plaintiff's "last-second" withdrawal of the Section 523 Count appears to the Court to be a calculated effort to elude the repercussions of Section 523(d), the purpose of which is clear. That Section is intended to operate as a strong deterrent to a creditor's commencement of marginal or unjustified objections to dischargeability. In enacting Section 523(d) Congress recognized the usual wide disparity in litigation resources possessed by creditors and consumer debtors; a fact that might often be exploited by unscrupulous or reckless creditors. Such creditors may be tempted to bring or continue untenable dischargeability cases simply to "scare up" an installment-type settlement from a cash-poor debtor. Debtors are frequently unable to fund an adequate defense in such cases, and, therefore, may be inclined to agree to the nondischargeability of a debt in a reduced amount rather than fund the current costs of defending the litigation. *See* H.R.Rep. No. 595, 95th Cong., 2d Sess. 131, U.S.Code Cong. & Admin.News 1978, p. 5963. The provision of awards under Section 523(d) ameliorates this potential for abuse by deterring creditor overreaching and supplying a monetary incentive for counsel to enter such cases on behalf of debtors. *See id.* at 365.

Notably, by its terms Section 523(d) can require the payment of costs by a creditor irrespective of the creditor's actual intent in commencing and/or continuing a Section 523(a)(2) action. In other words, a creditor can be liable for costs under Section 523(d) even if it innocently prosecuted a substantially unjustified dischargeability complaint. This is appropriate given the statute's deterrent purpose and the difficulty of proving intent by direct evidence.

---

**26.** As noted, *supra,* the Defendants have failed to plead causes of action under Bankruptcy Code Section 522(h) (permitting, under limited circumstances, debtor prosecution of avoidance actions).

In order for Section 523(d) to operate in the manner that Congress intended, courts must be willing to apply its terms in a straight-forward manner. The Court's analysis is essentially a two-step process. First, if the creditor has abandoned its Section 523(a)(2) action, the Court must determine if the "position of the creditor was... substantially justified". If the Court finds that there was not substantial justification, it must next consider whether Section 523(d)'s fee and cost award should be mitigated, in whole or part, due to the presence of "special circumstances." Stated more succinctly, if "substantial justification" is absent, the statute mandates[27] an award of all of costs of litigation, including reasonable attorneys fees,[28] unless "special circumstances" compel mitigation of those amounts.

Although the Debtor–Defendants shoulder the ultimate burden of persuading the Court of their entitlement to costs and fees under Section 523(d), once they establish (1) that the Plaintiff requested a determination of the dischargeability of a consumer debt, and (2) that the debt nonetheless was discharged, the burden of production then shifts to the Plaintiff on the questions of "substantial justification" and "special circumstances". *See, e.g., AT & T Universal Card Service, Inc. v. Kennedy (In re Kennedy)*, 1994 WL 721508, *4–6 (D.Kan. Dec. 27, 1994); *FCC National Bank v. Dobbins (In re Dobbins)*, 151 B.R. 509, 511 (W.D.Mo.1992); *Chrysler First Financial Services Corp. v. Rhodes (In re Rhodes)*, 93 B.R. 622, 624 (Bankr.S.D.Ill. 1988); *In re Woods*, 69 B.R. 999, 1001 (Bankr.E.D.Pa.1987). The Debtors have easily met their initial burden of production. Thus, the Court must now provide opportunity, as requested during argument, for the Plaintiff to establish its position was "substantially justified" and/or that "special circumstances would make an award unjust".

## V. CONCLUSION

For the foregoing reasons, the following relief shall be entered by separate order:

1. Judgment shall enter in favor of the Defendants on the Plaintiff's Amended Complaint, overruling the Plaintiff's objection under 11 U.S.C. § 727(a)(4) to the granting of a discharge to the Debtors;

2. Judgment shall enter in favor of the Plaintiff on the Defendants' counterclaims brought under 11 U.S.C. §§ 362 and 547;

3. A Hearing shall be held on ***Wednesday May 9, 2001, at 11:30 AM*** at the United States Bankruptcy Court for the District of Connecticut, Connecticut Financial Center (18th Floor), 157 Church Street, New Haven, at which the Plaintiff and its various counsel in this proceeding—JoAnn C. Silva, Esq., Joseph M. Tobin, Esq., Mary Elizabeth Oppenheim, Esq., Gregory Lattanzy, Esq., and Stephen Daniel Oppenheim, Esq.,—shall appear and **SHOW CAUSE** why they should not be sanctioned in this proceeding pursu-

**27.** Although the clear purpose of the 1984 amendment to Section 523(d) was to increase the court's discretion to not award fees and costs under appropriate circumstances, the award is still mandatory if the statutory exceptions are not found. *Household Finance Corp. v. VanBuren (In re VanBuren)*, 66 B.R. 422, 424–25 (Bankr.S.D.Ohio 1986).

**28.** An argument could be made that Section 523(d) contemplates the awarding of traditional court *costs* and counsel *fees*, but not litigation *expenses*. Congress has demonstrated in analogous contexts its recognition of and provision for all three classes of financial award to prevailing parties. *E.g.* Equal Access to Justice Act (providing for "costs", 28 U.S.C. § 2412(a), and "fees and *other expenses*", 28 U.S.C. § 2412(d)(1)(A) (emphasis supplied)).

ant to Fed.R.Civ.P. 9011, 28 U.S.C. § 1927, and/or the inherent powers of this Court; and

4. Further trial proceedings shall be held on **Wednesday May 9, 2001, at 11:30 AM** at the United States Bankruptcy Court for the District of Connecticut, Connecticut Financial Center (18th Floor), 157 Church Street, New Haven, on the Defendants' Third Counterclaim under 11 U.S.C. § 523(d), at which time the Plaintiff shall be provided an opportunity to establish that the filing of the original Complaint was "substantially justified" and/or that "special circumstances" would make an award pursuant to Section 523(d) "unjust", and, if appropriate, the Debtors shall be heard as to specific costs and damages, after which judgment shall enter on the subject counterclaim.

## ORDER SCHEDULING FURTHER PROCEEDINGS

This adversary proceeding came on for a hearing on May 18, and June 1, 1998. The Court, having now received and considered the evidence presented, and having heard and considered argument thereon, and entered this same date a *Memorandum of Decision on Amended Complaint, Defendants' Counterclaims, and Related Matters*, in accordance with which, it is hereby

**ORDERED** that further trial proceedings shall be held on the Defendants' counterclaim under 11 U.S.C. § 523(d) on **Wednesday May 9, 2001, at 11:30 AM,** at the United States Bankruptcy Court for the District of Connecticut, Connecticut Financial Center (18th Floor), 157 Church Street, New Haven, at which time the Plaintiff shall be provided an opportunity to establish that the filing of the original Complaint was "substantially justified"

and/or that "special circumstances" would make an award pursuant to Section 523(d) "unjust", and, if appropriate, the Debtors shall be heard as to specific costs and damages, after which judgment shall enter on the subject counterclaim.

## ORDER TO SHOW CAUSE

This adversary proceeding came on for a hearing on May 18, and June 1, 1998. The Court, having now received and considered the evidence presented, and having heard and considered argument thereon, and entered this same date a *Memorandum of Decision on Amended Complaint, Defendants' Counterclaims, and Related Matters*, in accordance with which, it is hereby

**ORDERED** that the Plaintiff and its various counsel in this proceeding—JoAnn C. Silva, Esq., Joseph M. Tobin, Esq., Mary Elizabeth Oppenheim, Esq., Gregory Lattanzy, Esq., and Stephen Daniel Oppenheim, Esq.,—shall appear on **Wednesday May 9, 2001, at 11:30 AM** at the United States Bankruptcy Court for the District of Connecticut, Connecticut Financial Center (18th Floor), 157 Church Street, New Haven, and **SHOW CAUSE** why they should not be sanctioned pursuant to Fed.R.Civ.P. 9011, 28 U.S.C. § 1927, and/or the inherent powers of this Court; and

**IT IS FURTHER ORDERED** that the Clerk shall serve a copy of this Order and the Memorandum of Decision on (i) all counsel for the Plaintiff identified in the preceding decretal paragraph, (ii) Darien R. Altieri, Esq.,[1] (iii) the Plaintiff, (iv) the Debtor–Defendants, (iv) Brian E. Kaligian, Esq. and Suzanne B. Sutton, Esq. (former counsel for the Debtors), (v) Barbara H. Katz, Esq. (the Chapter 7 Trustee), and

---

1. The Clerk has advised the Court that Daren R. Altieri, Esq. may presently represent the Plaintiff.

(vi) the Office of the United States Trustee.

## JUDGMENT ON COUNTERCLAIMS

This adversary proceeding came on for a hearing on May 18, and June 1, 1998. The Court, having now received and considered the evidence presented, and having heard and considered argument thereon, and entered this same date a *Memorandum of Decision on Amended Complaint, Defendants' Counterclaims, and Related Matters,* in accordance with which, it is hereby

**ORDERED** that judgment shall enter in favor of the Plaintiff on the Defendants' counterclaims brought pursuant to 11 U.S.C. §§ 362 and 547.