In re Antoinette AIELLO a/k/a Antoinette Rogers, Debtor.

Robert ROGERS, Plaintiff,

v.

Antoinette AIELLO a/k/a Antoinette Rogers, Defendant.

Bankruptcy No. 2–92–03924.
Adv. No. 2–92–2399.

United States Bankruptcy Court,
D. Connecticut.

Oct. 18, 1994.

Daniel H. Cohan, Serignese, Petrone & Zipfel, East Hartford, CT, for plaintiff.

Charles A. Maglieri, Bloomfield, CT, for debtor-defendant.

*MEMORANDUM OF DECISION ON OBJECTION TO DISCHARGE*

ROBERT L. KRECHEVSKY, Chief Judge.

## I.

### *ISSUE*

The matter before the court is a complaint brought by the plaintiff, Robert Rogers, the former husband of Antoinette Aiello, also known as Antoinette Rogers, the debtor, objecting to the granting of her discharge. The plaintiff relies, for the most part, on Code § 727(a)(4)(A) ("(a) The court shall grant the debtor a discharge unless— ... (4) the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account;") for the denial of the discharge. The court held hearings on the complaint over several nonconsecutive days, commencing March 2, 1994 and terminating July 27, 1994, after which the parties submitted memoranda of law.

## II.

### *BACKGROUND*

The debtor, nee Antoinette Costanza, now 41 years old, is a native of Italy who came to the United States in 1971. Her first marriage, during which three children were born, ended with a decree entered by an Iowa court. As a result of the dissolution of that marriage, the debtor retained sole ownership of realty in Des Moines, Iowa, known as 4001 Willowmere Circle (the Iowa property). On November 10, 1984, the debtor intermarried with the plaintiff in Iowa. This second marriage ended with a marriage dissolution decree entered on April 10, 1989 by the Connecticut Superior Court, in which the plaintiff was required to vacate the Connecticut family residence and the debtor was ordered to pay the plaintiff $10,000 within 60 days of the decree and $10,000, without interest, two years from the date of the decree. When neither of the payments was received, the plaintiff, in August 1992, started a contempt proceeding against the debtor in the Superior Court. The debtor's lawyer in the contempt action referred the debtor to Attorney Gene Cohen, Esq. (Cohen), an experienced bankruptcy attorney, for the purpose of filing an immediate bankruptcy petition.

Cohen, after meeting with the debtor and taking down her responses to the questions posed in the bankruptcy petition and schedules (the "petition"), caused a Chapter 7 petition to be drafted. The debtor, on October 1, 1992, after review, executed the petition. Cohen filed the petition with this court on October 2, 1992.

The debtor, on March 24, 1992, had executed a warranty deed in anticipation of a pending sale of her Iowa property. The sale concluded on April 30, 1992, with the debtor shortly thereafter receiving a check for the net sales proceeds in the amount of $65,-871.37. On May 5, 1992, the debtor initially deposited this check in a newly-opened savings account at the Tolland Bank. On May 20, 1992, she closed this account and opened another savings account at the Bank of South Windsor, with a deposit, on June 4, 1992, of $64,471.44. The debtor then caused two cashier's checks totaling $39,958.75 to be issued to a former boyfriend, with whom she had remained in contact, as repayment of loans received from him over a period of years starting in 1989. These checks were dated June 25, 1992 (for $3,100.00) and July 24, 1994 (for $36,858.75). On July 20, 1992, the debtor made a cash gift of $5,800.00 from this account to one of her daughters. Prior to closing out the Bank of South Windsor account on July 30, 1992 by a withdrawal of

the then balance of $405.24, the debtor had paid various medical, tradesmen and furniture purchase bills.

The debtor's petition, filed on October 2, 1992, disclosed none of the events described in the preceding paragraph. She had answered "None" to all of the following questions appearing on her petition: (a) whether she had made any payments (1) exceeding $600 to any creditor within 90 days of commencement of the case, (2) within one year for benefit of creditors who are or were insiders, (3) as gifts within one year exceeding $200 to family members; (b) whether she had made any transfers of property within one year; and (c) whether she had closed any checking or savings accounts within one year.

The court scheduled December 3, 1992 as the date for the first meeting of creditors. The Office of the United States Trustee had designated John J. O'Neil, Esq. (O'Neil) as the debtor's Chapter 7 interim trustee. On or about November 4, 1992, the plaintiff advised O'Neil by letter that the debtor had sold her Iowa property on April 30, 1992 and had failed to report this transaction in her petition. The plaintiff also forwarded to O'Neil a copy of the transfer deed.

When Cohen and the debtor appeared for the creditors' meeting, which was also attended by the plaintiff and his attorney, O'Neil advised Cohen of the information he had received from the plaintiff. Cohen then requested, on the record, a continuance of the creditors' meeting so that she could file an amendment to the debtor's petition to set forth the debtor's transfer of property. O'Neil asked Cohen to include information on how the debtor disposed of the sale proceeds, and continued the meeting to December 14, 1992.

The debtor executed, on December 14, 1992, an amendment to the petition which states only that she had transferred the Iowa property on April 30, 1992 for a price of $83,478. At the December 14, 1992 continued creditors' meeting, O'Neil and the plaintiff's attorney questioned the debtor about the Iowa property transfer and the debtor's use of the proceeds. O'Neil also asked about any pending tort claims, and the debtor conceded she held such a claim and had failed to

list it. Cohen, on January 20, 1993, filed with the court a second amendment to the petition listing the debtor's personal injury action, claiming a $7,500 exemption in the action and listing the Tolland Bank (but not The Savings Bank of South Windsor) as a financial account closed during the prior year.

The debtor thereafter retained new bankruptcy counsel, Charles A. Maglieri, Esq., who, on or about February 5, 1993, filed a completely amended petition to list properly all the matters hereinbefore mentioned, and to make further corrections concerning, *inter alia*, omitted rental income from the Iowa property.

At trial, the plaintiff testified that he had been in regular communication with the debtor prepetition concerning the $20,000 due him under their marriage dissolution decree. The debtor had promised payment when she sold the Iowa property. He stated that when he telephoned the debtor in June 1992, the debtor denied the Iowa property had been sold and stated that she was still unable to pay him. When he later discovered the completion in April 1992 of the sale, he filed his contempt action against the debtor in state court.

The debtor generally asserted misunderstanding of questions or memory loss as the reasons she made false statements in the petition. She also claimed she may have advised Cohen of the Iowa property transfer at her first meeting with Cohen and that she told Cohen of the omission in the petition of the transfer just prior to the commencement of the first creditors' meeting on December 3, 1992.

Cohen testified she spent between one and one-half to two hours with the debtor at the initial meeting, taking down the information included in the petition. Cohen stated she was not aware of any difficulty that the debtor had in responding to her questions and did not recall any mention of a property transfer. Cohen stated the debtor first advised her of the omitted Iowa transfer in the hearing room at the December 3, 1992 creditors' meeting. Cohen denied being advised by O'Neil of his receipt of a letter from the plaintiff prior to her stating on the record

that she wished a continuance to file an amendment to the petition.

## III.

### DISCUSSION

In her post-trial memorandum, the debtor, while conceding the numerous false statements in her petition, contends that there was no evidence of a "specific intent to knowingly and fraudulently make a false oath or account," (Defendant's Memorandum at 5); that Cohen insufficiently explained to the debtor the significance of the questions contained in the petition, and, thus, the debtor's mistakes were "honest" ones, *id.* at 15; that the debtor could have no fraudulent intent inasmuch as the plaintiff, prior to the filing of the petition, was aware of the Iowa property transfer, *id.* at 17; and that the debtor intended to amend her petition to correct the omission of the transfer prior to O'Neil's advising Cohen of such omission. *Id.* at 22.

At the beginning of the hearing, the debtor indicated a problem with the English language lay at the heart of the issue of the false answers. The court finds that the debtor is a knowledgeable person with sufficient fluency in English to remove that contention as the cause of her problem. The debtor presently retains a responsible management position with a large company, a job she could not handle if she had communication problems.

The principles governing objection to discharge complaints under § 727(a)(4)(A) are well established. The plaintiff's burden of proof is the preponderance of the evidence standard. *See Grogan v. Garner*, 498 U.S. 279, 287–88, 111 S.Ct. 654, 660, 112 L.Ed.2d 755, 765 (1991). The plaintiff must establish that "(1) the debtor made a statement under oath, (2) such statement was false, (3) the debtor knew the statement was false, (4) the debtor made the statement with fraudulent intent, and (5) the statement related materially to the bankruptcy case." *Nisselson v. Wolfson (In re Wolfson)*, 139 B.R. 279, 287–88 (Bankr.S.D.N.Y.1992) (citation omitted). "The case law indicates no further evidence of fraud is necessary if a debtor's bankruptcy schedules reflect a 'reckless indifference to

the truth.'" *Id.* (quotation omitted). "The objecting creditor must prove actual fraud not just constructive fraud. Nonetheless, actual intent may be inferred from the debtor's actions, and may be proven by circumstantial evidence, since a debtor is unlikely to testify that his interest was fraudulent." *Bank of India v. Sapru (In re Sapru)*, 127 B.R. 306, 316 (Bankr.E.D.N.Y.1991) (citations omitted); *see Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 660 (Bankr.E.D.N.Y.1993) ("fraudulent intent is rarely susceptible to direct proof, but may be deduced from the facts and circumstances of a case"). "Subsequent disclosure by the debtor is not sufficient to overcome the allegations of false oath or account." *Bank of India v. Sapru*, 127 B.R. at 317.

The court concludes, after reviewing the testimony, the credibility of witnesses, and considering all other evidence, that the debtor knowingly and fraudulently made numerous false oaths regarding the transfer of her Iowa property, the payments to or for the benefit of creditors, the payment as a gift, and the closing of her bank accounts. The debtor failed to offer a satisfactory explanation for the false statements in her petition. At the least, the debtor's false statements demonstrate a reckless indifference to the truth.

It is common ground that the central purpose of federal bankruptcy law is "to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Grogan v. Garner, supra*, 498 U.S. at 286, 111 S.Ct. at 659, 112 L.Ed.2d at 764 (citations omitted). The provisions of § 727 are "designed to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." *United Bank of the Middle East, Ltd. v. Farouki*, 133 B.R. 769, 776 (Bankr.E.D.Va.1991) (citation and internal quotations omitted). The debtor is not entitled to a bankruptcy discharge.

## IV.

### CONCLUSION

The plaintiff has carried his burden of proof that the court deny the debtor her discharge, and a judgment may enter denying the discharge.