In re F. David McGOVERN, Debtor.

Jack P. CAOLO, Plaintiff,

v.

F. David McGOVERN, Defendant.

Bankruptcy No. 92–52923.
Adversary No. 92–5306.

United States Bankruptcy Court,
D. Connecticut.

Dec. 12, 1997.

Susan L. Miller, Law Offices of Skelley Rottner P.C., Hartford, CT, for plaintiff.

F. David McGovern, Shelton, CT, defendant, pro se.

MEMORANDUM OF DECISION ON COMPLAINT OBJECTING TO DISCHARGE AND DISCHARGEABILITY OF DEBT

ALBERT S. DABROWSKI, Bankruptcy Judge.

## I. INTRODUCTION

In this adversary proceeding, the Plaintiff, a practicing attorney, seeks to preserve from discharge a debt for legal services owed by the Debtor–Defendant. The Plaintiff seeks to achieve such preservation through a denial of the general discharge of the Defendant or, alternatively, through exception of the subject debt from any discharge which the Defendant might receive. For the reasons which follow, this Court finds the Plaintiff's objections to discharge to have an insufficient evidentiary basis, and his discharge exception claims untenable as a matter of law.

## II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(I), (J).

## III. PROCEDURAL AND FACTUAL BACKGROUND

On August 28, 1992, the Debtor, F. David McGovern (hereafter referred to as the "Defendant"), filed a voluntary petition for relief under Chapter 7 of Title 11, United States Code. The Schedules and Statements required by Rule 1007(b) of the Federal Rules of Bankruptcy Procedure (hereafter referred to as the "Bankruptcy Rules") were filed by the Defendant simultaneously with the voluntary petition.

This Court set a deadline of December 7, 1992 for the filing of complaints objecting to the Defendant's discharge and/or the dis-

chargeability of individual debts. On December 7, 1992, the instant adversary proceeding was commenced by the Plaintiff through the filing of a "Complaint Objecting to Discharge of Debtor" (hereafter referred to as the "Complaint").

By letter dated July 29, 1994, the Plaintiff's attorney advised the Clerk that, *inter alia*, "[t]he Court's pretrial order has been complied with and the matter is ready for trial. Accordingly, we are asking that this matter be scheduled for trial, which trial is expected to take two to three hours." In reliance on that representation, the Court scheduled trial for November 16, 1994. On that date the parties appeared before the Court, at which time the Plaintiff's counsel filed and served upon the Defendant in open court a series of motions, to wit: (1) "Motion for Sanctions, Failure to Comply with Discovery Requests", (2) "Motion for Order Deeming Movant's Requests for Admission Admitted", and (3) "Motion for Judgment of Default". The Court denied all three motions in open court on November 16, 1994 [1], and trial was rescheduled for December 6, 1994.

At trial on December 6, 1994, the Court heard the arguments of the parties, admitted a series of exhibits, and received the testimony of three witnesses, namely: (1) the Plaintiff, (2) the Defendant, and (3) Nicholas Burlingham. The following facts emerge from these sources.

In 1989, the parties were introduced to each other through the Defendant's sister-in-law, Katherine McGovern, who was a friend and former legal colleague of the Plaintiff. At that time the Defendant retained the Plaintiff to provide him with legal representation in his defense of a lawsuit initiated by the federal government. The parties reached an agreement as to the terms of the Plaintiff's retention during a telephone conversation. That telephone conversation was a "conference call" involving the Plaintiff, the Defendant, Katherine McGovern, and Attorney Thomas Mulligan. During the conference call, the Plaintiff and Katherine Mc-

---

1. These three motions were "renewed" by the Plaintiff in argument at the close of the evidence at trial. The renewed motions are DENIED for the reasons stated on the record on November 16, 1994.

Govern were together in her private law office in Texas. Thomas Mulligan (hereafter, the "Executor") was, and apparently still is, a co-executor of the probate estate of James L. McGovern, the deceased father of the Defendant. At that time the Defendant did not possess sufficient liquid assets to pay the Plaintiff's anticipated charges–projected to exceed $100,000.00–for attorneys fees and costs. The only real security for those charges was the prospect of a sizable distribution to the Defendant from the probate estate of his father (hereafter, the "Probate Estate"). The Executor was included on the conference call to provide the Plaintiff with information regarding the Defendant's interest in the Probate Estate.

The Executor and/or the Defendant represented to the Plaintiff that the Defendant had a one-sixth (1/6th) interest in the Probate Estate, the most significant asset of which was a yet-unliquidated house on Cape Cod, Massachusetts possessing a fair market value represented by the Executor and/or the Defendant to be between $1.2 and 1.4 million. It is unclear whether the Plaintiff took, or intended to take, a security interest in the Defendant's interest in the Probate Estate, or whether the Plaintiff merely accepted the representations of value in assessing the credit-worthiness of the Defendant.

The Plaintiff successfully completed his representation of the Defendant by securing both a dismissal of the lawsuit against him and a formal apology from the federal government. Shortly thereafter the Plaintiff rendered his final bill for legal services in the amount of $71,308.49. The Defendant does not dispute any of the bill of the Plaintiff, and readily admits his pre-discharge personal liability for that amount. However, he maintains that the full amount of such debt is dischargeable in this bankruptcy case.

## IV. DISCUSSION

The Plaintiff engages in a two-pronged effort to preserve his claim against the Defendant. In the first instance, the Plaintiff seeks to have the bankruptcy discharge of the Defendant denied in its entirety. In the alternative, the Plaintiff prays that the subject debt alone be declared non-dischargeable in the instant bankruptcy case.

### A. Objection to Discharge.

The Plaintiff's Complaint pleads two different causes of action for denial of discharge under Bankruptcy Code Section 727, which provides in pertinent part as follows:

> (a) The court shall grant the debtor a discharge, unless—
>
> \*    \*    \*    \*    \*    \*
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
> (A) made a false oath or account; [or]
>
> \*    \*    \*    \*    \*    \*
>
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities. . . .

11 U.S.C. § 727 (1992).

The party objecting to the granting of a discharge bears the ultimate burden of persuasion in an adversary proceeding pursuant to Section 727(a). Fed.R.Bank.P. 4005.

### 1. Section 727(a)(4)(A).

■ To prevail on a cause of action under Section 727(a)(4)(A), a plaintiff must establish that (1) the debtor made a statement under oath, (2) such was false, (3) the debtor knew the statement was false, (4) the debtor made the statement with fraudulent intent, and (5) the statement related materially to the bankruptcy case. *E.g.*, *In re Aiello*, 173 B.R. 254, 257 (Bankr.D.Conn.1994); *In re Maletta*, 159 B.R. 108, 112 (Bankr.D.Conn.1993).

■ Here, the Plaintiff directs the Court's attention to allegedly false written statements signed by the Defendant under penalty of perjury. Specifically, the Complaint alleges that the Defendant included within his bankruptcy Schedules the names of creditors to whom he was not personally liable.[2]

---

**2.** At trial the Plaintiff attempted to establish an additional factual basis for his Section 727(a)(4)(A) cause of action, namely, that although the Defendant disclosed in Schedule B

Although the Court could speculate as to circumstances under which the scheduling of "false" creditors might evidence a fraudulent purpose, in this case the testimony of the Defendant and Nicholas Burlingham confirm that although the Defendant may have scheduled certain creditors unnecessarily, he did so only in an abundance of caution where there was some honest, subjective uncertainty as to his personal liability. Such "over-scheduling" is far from fraudulent. To the contrary, it represents a legitimate and prudent course of conduct for a debtor seeking to gain maximum benefit from his anticipated bankruptcy discharge. *Cf.* 11 U.S.C. § 523(a)(3) (1992) (excepting unscheduled debts from discharge under certain circumstances).

## 2. Section 727(a)(5).

■ The Plaintiff's cause of action under subsection (a)(5) of Section 727 is equally unavailing. The Plaintiff has completely failed to meet its initial burden of proving a "loss" of assets. *See* 6 *Collier on Bankruptcy* ¶ 727.08, p. 727–44 (15th ed.1996). And although the Defendant's bankruptcy Schedules reveal a "deficiency of assets to meet liabilities"[3], the Plaintiff has failed to carry its initial burden of demonstrating an extraordinary factual scenario sufficient to shift the burden to the Defendant to "explain satisfactorily" such deficiency. *See id.* The Plaintiff did not call the Debtor as a witness, or otherwise elicit his explanation of any "loss" or "deficiency". Accordingly, the Plaintiff's Section 727(a)(5) cause of action fails for lack of proof.

## B. Dischargeability Determination–11 U.S.C. § 523(a)(2).

Having rejected the Plaintiff's attempts to have the Defendant's general discharge denied, the Court now turns to the Plaintiff's alternative prayer that his individual debt be excepted from discharge under the terms of Section 523(a)(2), which provides in pertinent part as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(2) for money, property, services or an extension ... of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition:*

(B) use of a *statement in writing* —

(i) that is materially false;

(ii) *respecting the debtor's or an insider's financial condition;*

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive ...

11 U.S.C. § 523 (1992) (emphasis supplied).

■ In view of the "fresh start" policy of the Bankruptcy Code, exceptions to the dischargeability of debts should be narrowly construed in favor of a debtor. *In re Bonnanzio,* 91 F.3d 296, 300 (2d Cir.1996). Fairly construed, Section 523(a)(2) does not provide a remedy for the only credit-inducing "false" conduct arguably established at the trial of this proceeding, namely, the making of *oral* statements regarding the existence, extent, and value of the Defendant's interest in the Probate Estate. Such statements, if in fact made by the Defendant, were representations concerning his and/or the Probate Estate's "financial condition". And although certain debts induced by *written* misrepresentations of financial condition are excepted from discharge under Section 523(a)(2)(B), no provision of Section 523 creates a dischargeability cause of action for *oral* misrepresenta-

---

his property interest in the Probate Estate, he scheduled its value as "NONE", although allegedly he knew that it possessed a substantial value. The Plaintiff has not asked that the pleadings be conformed to the evidence pursuant to Bankruptcy Rule 7015(b). Yet even if this Court were to consider the Complaint amended to conform to the evidence of scheduling of the Defen-

dant's interest in the Probate Estate, the Court would find that the Plaintiff failed to establish that the Defendant undertook that scheduling with the requisite fraudulent intent.

**3.** A technical "deficiency of assets to meet liabilities" is inherent in nearly all bankruptcy cases.

tions regarding financial condition. *E.g., Blackwell v. Dabney (In re Blackwell),* 702 F.2d 490 (4th Cir.1983).

As an initial matter, subsection (a)(2)(A) of Section 523 excludes from its ambit *any* "statement"–*written or oral*–"respecting . . . financial condition". Therefore, unless excepted from discharge by some provision of Section 523 other than subsection (a)(2)(A), any debt induced through the use of false or fraudulent statements regarding financial condition is dischargeable. Such provision does exist–in the form of subsection (a)(2)(B)–but only for statements "in writing". *See, e.g., Bellco First Federal Credit Union v. Kaspar (In re Kaspar),* 125 F.3d 1358, 1362 (10th Cir.1997); *cf., Field v. Mans,* 516 U.S. 59, 66, 116 S.Ct. 437, 441, 133 L.Ed.2d 351 (1995) (discussing relationship of subsections (a)(2)(A) and (B)). The Plaintiff here made no allegation, let alone offered proof, that any of the allegedly offending statements were in writing. Accordingly, the Plaintiff has failed to state a non-dischargeability claim upon which relief can be granted.

## V. CONCLUSION

For the foregoing reasons, judgment shall enter in favor of the Defendant in this adversary proceeding.

## JUDGMENT

The above-captioned adversary proceeding having come on for trial on December 6, 1994; and the Court having this day issued its Memorandum of Decision on Complaint Objecting to Discharge and Dischargeability of Debt, in accordance with which

IT IS HEREBY ORDERED that judgment shall enter in favor of the Defendant.