In re Stephen A. CACIOLI, Debtor.

D.A.N. Joint Venture, a Limited Partnership; Cadlerock Joint Venture, L.P.; and the Cadle Co. Plaintiffs,

v.

Stephen A. Cacioli, Defendant.

Bankruptcy No. 98–31593.
Adversary No. 98–3239.

United States Bankruptcy Court,
D. Connecticut.

Dec. 6, 2002.

Edward P. Jurkiewicz, Esq., Gaide & Associates, LLC, Avon, CT, for Plaintiff.

Barbara H. Katz, Esq., New Haven, CT, for Debtor–Defendant.

## MEMORANDUM OF DECISION ON OBJECTION TO DISCHARGE

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

In this adversary proceeding certain of the Debtor's creditors challenge his entitlement to a discharge of debts under Chapter 7 of the Bankruptcy Code. The Court, after trial, finds no basis for their Complaint.

### II. JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(J).

### III. FACTUAL BACKGROUND

The Debtor was the sole witness at the trial of this proceeding. His testimony was concise, non-evasive and highly credible. This Factual Background is derived from that testimony and associated trial Exhibits, as well as the Court's own noticing of the official files and records of this case and that of related debtors, James & Ruth Rosenberry (Case No. 98–31531).

The Debtor is a high school graduate with no formal education or training in bookkeeping, accounting, law or business generally. For almost 20 years the Debtor was an employee of the United States Postal Service. The Debtor has also been involved in the brokerage of real estate. Presently, the Debtor and his wife are the owners of the equity in a small corporate business known as A & S Property Management, Inc. (hereafter, "A & S"), which serves as an outside management firm for condominium associations. A & S has approximately four employees, other than the Debtor, who furnish the vast majority of the firm's services to its clients. As of the time of trial, A & S was not a profitable business, and the Debtor drew only minimal compensation from it.

During Connecticut's real estate boom in the 1980's, the Debtor became a partner in various real estate partnerships (hereafter, "Partnership(s)").[1] The Partnerships were engaged primarily in the purchase, rehabilitation, and management of multi-family residential real estate in Connecticut. There were several partners in the various Partnerships, most notably one James Rosenberry (hereafter, "Rosenberry").

Given his lack of financial expertise, and his experience as a real estate broker, the Debtor's primary role in the Partnerships was to locate properties worthy of investment. By contrast, Rosenberry was the partner primarily responsible for the direction of the Partnerships' financial business, the day-to-day management of the Partnerships' properties (hereafter, the "Properties"), as well as the maintenance and custody of the books and records of the Partnerships (hereafter, the "Partnership Records").

As Connecticut's real estate boom began to turn toward bust in the late 1980s, the Partnerships struggled to preserve the Properties from foreclosure. In 1990, the

---

1. The Debtor left the employ of the United States Postal Service to engage in this endeavor. His wife—also a long-term postal employee—chose to remain with the Postal Service.

Debtor "withdrew" from the Partnerships, and in the process took title to several of the Properties (hereafter, the "Distributed Properties"). This act essentially left Rosenberry to struggle alone with the balance of the Properties (hereafter, the "Retained Properties").[2]

As time progressed, Rosenberry was unable to save the Retained Properties from foreclosure, and the Debtor, too, lost the Distributed Properties to mortgage or tax foreclosure. In April of 1998, Rosenberry filed a personal Chapter 7 petition in this Court. In that case Rosenberry was represented by Attorney Laurence Nadel (hereafter, "Nadel" or "Attorney Nadel"). Rosenberry furnished Nadel with the Partnership Records germane to his personal bankruptcy case, *i.e.* those records pertaining to the financial obligations of the Partnerships and their individual partners.

The Debtor, too, was contemplating filing for bankruptcy relief, and he determined that in light of Attorney Nadel's familiarity with the Partnerships, and the resulting personal liability of Rosenberry, it would be cost effective and prudent to utilize the services of Attorney Nadel for his own bankruptcy case. Since Attorney Nadel was already in possession, and presumably familiar with, the Partnership Records, it was necessary for the Debtor to furnish him only with information respecting his own personal, non-Partnership-related assets, income and liabilities (hereafter, the "Personal Information").

Attorney Nadel prepared the Debtor's bankruptcy Petition, Schedules and State-ments (hereafter, the "Schedules and Statements"), presumably from the Personal Information and the Partnership Records. After a cursory review of the Schedules and Statements as prepared by Attorney Nadel, and believing them to be accurate, the Debtor signed them under penalty of perjury. In point of fact, the Schedules and Statements contained some errors, as well as numerous and consistent omissions from the information required by their instructions. For the most part, only a close reading of the Instructions would have revealed these omissions.

In May 1998, the Plaintiffs obtained authorization to conduct a Bankruptcy Rule 2004 examination of the Debtor. In aid of that examination, the Plaintiffs served a subpoena duces tecum upon the Debtor. Pursuant to that subpoena the Debtor appeared for examination, testified, and produced certain documents. The Plaintiffs believe that the Debtor did not produce all of the documents and other information requested by the subpoena duces tecum.

On September 25, 1998, the Plaintiffs commenced the instant adversary proceeding, seeking to have the Debtor's expected discharge denied under Sections 727(a)(2), (3), (4)(A), (4)(D) and (5). By the time of trial, the Plaintiffs had narrowed the bases of their request to 727(a)(3), (4)(A), and (5).[3]

## IV. DISCUSSION

### A. Legal Background.

█ In appreciation of the fact that a denial of a debtor's discharge "imposes an

---

**2.** On occasion, Rosenberry would negotiate a forbearance agreement, mortgage modification, or other accommodation with the bank(s) holding mortgages on certain of the Properties. In that connection, and despite his "withdrawal", the Debtor lent his endorsement to the renewed or restated Partnership obligations.

**3.** Accordingly, the Court deems causes of action under Sections 727(a)(2) and (4)(D) to have been abandoned by the Plaintiffs, and judgment on those claims shall be entered in favor of the Debtor–Defendant.

extreme penalty for wrongdoing," the United States Court of Appeals for the Second Circuit, in *In re Chalasani,* 92 F.3d 1300 (2d Cir.1996), instructed that Section 727 "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt' " *Id.* at 1310. Nevertheless, the relief of a bankruptcy discharge is not an absolute right, but rather a privilege accorded honest debtors who provide honest and ample disclosure to parties in interest and otherwise satisfy bankruptcy's statutory obligations.

■ The provisions of Code Section 727 implicated in the instant proceeding provide in pertinent part as follows:

(a) The court shall grant the debtor a discharge, unless—

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

\*     \*     \*     \*     \*     \*

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

\*     \*     \*     \*     \*     \*

11 U.S.C. § 727 (1998). The party objecting to the granting of a discharge bears the ultimate burden of persuasion in an adversary proceeding pursuant to Section 727(a). Fed. R. Bank. P. 4005.

**B.   Elements of Section 727(a)(3).**

Under Section 727(a)(3), a plaintiff must first establish that the debtor concealed, destroyed, or failed to keep material records. Once that *prima facie* case is established, the burden shifts to the defendant to furnish credible rebuttal evidence demonstrating that the subject conduct or inaction was justified. *E.g., In re Blonder,* 258 B.R. 534, 538 (Bankr.D.Conn.2001); *In re Hecht,* 237 B.R. 7, 9 (Bankr.D.Conn. 1999).

■ Here, the Plaintiffs have wholly failed to make out a *prima facie* case that the Debtor concealed, destroyed, mutilated, or falsified any records. There was no evidence of destruction, falsification or mutilation. And while there was some evidence that the Debtor failed to turn over all potentially germane records when requested, that failure does not amount to a "concealment". Concealment involves a deliberate attempt to shield certain recorded information from detection and/or inspection. In this case the Debtor made good faith judgments as to what records in his possession would satisfy the subject requests, and then produced those. As to other, unproduced, records, the Debtor's examination testimony was informative as to the existence of those records, and made clear his amenability to their future production. There was no attempt to conceal.

■ The Plaintiffs have, however, established that the Debtor failed to "keep or preserve ... recorded information from which [his] financial condition or business transactions might be ascertained". The evidence at trial established that the Debtor failed to create, maintain and/or preserve the complement of business and personal records that would be expected of a

reasonably prudent person in the Debtor's position. The question thus becomes whether the Debtor's failures in this regard are "justified".

Section 727(a)(3) does not specify what constitutes justification for poor record-keeping. Rather, that element was left undefined by the statute, requiring the court to make a determination based upon all the circumstances of the case. *See e.g., In re Halpern*, 387 F.2d 312, 314 (2d Cir. 1968) ("What constitutes adequate record keeping, is a question in each instance of the reasonableness in the particular circumstances" (internal quotations omitted)). In considering a debtor's proffered justification, a court may consider the following circumstances, *inter alia*—

1. whether the debtor is engaged in business, and if so, the complexity and volume of the business;

2. the amount of the debtor's obligations;

3. whether the debtor's failure to keep or preserve records was due to the debtor's fault;

4. the debtor's education, business experience and sophistication;

5. the customary business practices for record keeping in the debtor's type of business;

6. the degree of accuracy disclosed by the debtor's existing books and records;

7. the extent of any egregious conduct on the debtor's part;

8. the debtor's courtroom demeanor; and

9. any special circumstances that may exist.

*E.g., State Bank of India v. Sethi (In re Sethi)*, 250 B.R. 831, 838–39.

Upon the record as a whole this Court determines that the Debtor's failure to keep and/or preserve adequate records was justified under all relevant circumstances. This determination is made with particular, though not exclusive, reference to *Sethi* factors 1, 4, 7 and 8, to wit: (i) although the Debtor is engaged in a business—A & S—it is not an unusually complex business which might compel the keeping of meticulous records in order to decipher its financial condition; (ii) the records of the Debtor's prior business engagements-the Partnerships-were created, maintained, and preserved by Rosenberry; (iii) given the Debtor's education and experience, he could not be expected to have kept sophisticated records; (iv) there is no evidence that the Debtor engaged in any fraudulent or otherwise egregious behavior; and (v) the Debtor's trial testimony was frank, non-evasive, and highly credible. In sum, the Debtor's record-keeping deficiencies are not sufficient to warrant a discharge denial pursuant to Bankruptcy Code Section 727(a)(3).

## C. Elements of Section 727(a)(4).

The elements of a cause of action under Section 727(a)(4)(A) require a plaintiff to prove that:

(1) the debtor made a statement under oath;

(2) such statement was false;

(3) the debtor *knew the statement was false;*

(4) the debtor made the statement with *fraudulent intent;* and

(5) the statement related materially to the bankruptcy case.

*E.g., In re Aiello*, 173 B.R. 254, 257 (Bankr.D.Conn.1994); *In re Maletta*, 159 B.R. 108, 112 (Bankr.D.Conn.1993).

The Plaintiffs allege that the Debtor made material misstatements and omissions within his bankruptcy Schedules and Statements. Indeed, statements made in bankruptcy schedules and/or statements

are within the scope of Section 727(a)(4). The Debtor acknowledges certain omissions and other inaccuracies in his Schedules and Statements but argues, *inter alia,* that he acted without knowledge of the inaccuracies and without fraudulent intent.

A statement is considered to have been made with knowledge of its falsity only if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth. *Maletta,* 159 B.R. at 112. Further, a statement should not be deemed to have been made with fraudulent intent simply because it is false. *E.g., In re Arcuri,* 116 B.R. 873, 882 (Bankr.S.D.N.Y.1990).

Upon a detailed review of the evidence presented in this proceeding, the Court concludes that the Plaintiffs failed to establish by a preponderance of the evidence that the Debtor had any knowledge of the falsity of certain material aspects of his Schedules and Statements. Moreover, the record is completely barren of any fact tending to demonstrate fraudulent intent on the part of the Debtor. In sum, the Debtor's admitted failings in connection with the preparation and execution of his bankruptcy Schedules and Statements are not sufficient to warrant a discharge denial pursuant to Bankruptcy Code Section 727(a)(4).

**D. Elements of Section 727(a)(5).**

In order to prevail in having a debtor's discharge denied for failure to explain satisfactorily a loss or deficiency of assets, a plaintiff must meet an initial burden of producing some credible evidence of the requisite loss or deficiency. It would seem that the Plaintiffs here can meet this burden simply by pointing to the Debtor's bankruptcy Schedules, which technically reveal a "deficiency of assets to meet liabilities". However, there is some question whether simple "bankruptcy insolvency"—

which is the norm in Chapter 7 cases—is alone sufficient to meet the initial burden of production, or whether plaintiffs must also produce evidence of "unusual transactions" or disappearance of assets. *See* 6 Lawrence P. King, ed. *Collier on Bankruptcy* ¶ 727.08, p. 727–47 (15th ed. rev. 1998).

Ultimately it is unnecessary for the Court to determine whether the Plaintiffs have carried their initial burden, since even if they did, and the burden had thereby shifted to the Debtor, his trial testimony more than satisfactorily explained all relevant aspects of his financial history and condition. Accordingly, the Plaintiffs have failed to establish a cause of action under Code Section 727(a)(5).

**V. CONCLUSION**

For the foregoing reasons, judgment shall enter in favor of the Debtor–Defendant in this adversary proceeding.