**In re Stephen A. CACIOLI.**

**D.A.N. Joint Venture, et al., Plaintiffs–Appellants,**

v.

**Stephen A. Cacioli, Defendant–Appellee.**

**Docket No. 05–6651–bk.**

United States Court of Appeals, Second Circuit.

Argued June 21, 2006.

Decided Sept. 6, 2006.

Edward P. Jurkiewicz, Edward P. Jurkiewicz, LLC, New Hartford, CT, for Plaintiffs–Appellants.

James C. Graham, Pepe & Hazard LLP, Hartford, CT, for Defendant–Appellee.

Before MINER, CALABRESI, Circuit Judges, and RESTANI,* Judge.

RESTANI, Judge.

This appeal concerns an adversary proceeding by creditors ("Plaintiffs–Appellants" or "Appellants") pursuant to 11 U.S.C. §§ 727(a)(3), (a)(4), and (a)(5) (2000), challenging Stephen A. Cacioli's ("Debtor" or "Cacioli") entitlement to discharge of his debts under Chapter 7 of the Bankruptcy Code. The bankruptcy court ruled in favor of Cacioli on each ground, *Cadlerrock Joint Venture, L.P. v. Cacioli (In re Cacioli)*, 285 B.R. 778 (Bankr. D.Conn.2002), and the district court affirmed, *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 332 B.R. 514 (D.Conn. 2005). Appellants challenge the bankruptcy court's rulings as to §§ 727(a)(3) and (a)(5). We affirm.

## BACKGROUND

On April 22, 1998, Cacioli filed a petition for relief under Chapter 7 of the United States Bankruptcy Code. Cacioli's bankruptcy Schedule F listed fifty-eight creditors holding unsecured non-priority claims totaling $7,313,300. He attached an affidavit to his bankruptcy schedules asserting that "he has no personal knowledge" of the amounts due to thirty-three creditors, comprising $7,056,000 of the total estimated claims. Cacioli Aff. The affidavit states that these claims may have resulted from "guarantees, co-obligations, or partnership obligations, which ar[ose] from [his] involvement in real estate partnerships and real estate ventures which he abandoned more than four years ago." *Id.*

Cacioli is a high school graduate who worked as an employee of the United States Postal Service ("USPS") for almost twenty years. In 1970, he obtained his real estate license, but he never received any formal education or training in bookkeeping, accounting, law or business. In 1985, during a real estate boom, he terminated his position with the USPS to pursue his real estate interests full-time. He started a four-employee corporation called A & S Property Management ("A & S"). A & S handled the day-to-day business operations of approximately twenty-five condominium associations, which included collecting association fees, paying bills, arranging for contractors to perform work on the properties, and preparing monthly statements.

In addition, Cacioli entered into at least five partnerships in the mid–1980s, which were engaged in the purchase, rehabilitation, and management of multi-family real estate rental properties in the State of Connecticut.[1] Through these partnerships, Cacioli acquired partnership ownership interests and debt obligations in approximately thirty-five to forty properties. According to Cacioli's bankruptcy court testimony, his role in the Rosenberry Partnerships was to locate real estate for acquisition, while Rosenberry managed and

---

* The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

1. Petitioner testified that he had partnership interests in five or six partnerships, including Russell Street Partners, J & S Realty, and Mark II Associates. Apparently, the other partnerships did not have names. James Rosenberry was a partner in three of these partnerships ("Rosenberry Partnerships"), which appear to be greatest source of Cacioli's debt obligations and the focus of this dispute.

maintained all of the partnership financial records. Further, Cacioli testified that Rosenberry provided him with an annual K–1 partnership share-of-income statements necessary for his personal tax returns, but that he never received any other financial information or records.

In the late 1980s, conditions in the real estate market began to deteriorate, adversely affecting Cacioli's holdings. Cacioli would receive foreclosure complaints concerning some of the partnership properties, which he would forward to Rosenberry or to an attorney for Russell Street Partners. By December 31, 1990, Cacioli resigned from all of the Rosenberry Partnerships,[2] although he apparently remained liable for many of the partnership debts.[3] Over the next few years, all of Cacioli's distributed partnership properties and Rosenberry's retained partnership properties were foreclosed upon.[4]

In April of 1998, Rosenberry filed for bankruptcy under Chapter 7 of the Bankruptcy Code. For the purpose of the filing, Rosenberry forwarded the pertinent financial records from the Rosenberry Partnerships to his attorney, Laurence Nadel. Subsequently, Cacioli decided to file for bankruptcy under Chapter 7 and he retained Nadel to be his attorney because of his familiarity with the records pertaining to the Rosenberry Partnerships. To supplement these records, Cacioli furnished Nadel with records relating to his personal, non-partnership assets, income, and liabilities. Nadel prepared Cacioli's bankruptcy petition, schedules, and statements, and, after a cursory review of the documents, Cacioli signed the documents for filing.[5]

In May of 1998, creditors obtained authorization to conduct a Bankruptcy Rule 2004 examination of Cacioli, through which they obtained Cacioli's testimony and some documents. On September 25, 1998, Plaintiffs–Appellants brought this adversary action against Cacioli, objecting to bankruptcy discharge on the grounds that the Debtor: (1) failed to keep or preserve recorded information from which his financial condition and business transactions might be ascertained, 11 U.S.C. § 727(a)(3); (2) knowingly made a false oath or account in connection with his bankruptcy filing, 11 U.S.C. § 727(a)(4); and (3) failed to explain satisfactorily a loss of assets or a deficiency of assets, 11 U.S.C. § 727(a)(5). The bankruptcy court ruled in favor of Cacioli, concluding that he was justified in failing to maintain records from which his financial condition might be ascertained, that he did not knowingly supply any false information, and that he ex-

---

**2.** Cacioli produced a document showing his resignation from the Russell Street Partners and detailing the transfer of six properties as a part of his divestiture from the partnership. Cacioli did not explain his withdrawal from the other Rosenberry Partnerships.

**3.** Even after he withdrew from the Rosenberry Partnerships, Cacioli would endorse renewed and restated partnerships obligations upon which Rosenberry and mortgage-holding banks agreed.

**4.** Although Cacioli produced no documentary evidence showing what he did with the distributed properties, he testified that: (1) he returned the building on Carmel Street to Russell Street Partners, probably by a quit claim; (2) People's Bank foreclosed upon the property at 545 Saw Mill Road; and (3) the condominium association foreclosed upon three condominiums at 123 Elm Street. There is no testimony as to what happened to a sixth property, the condo at 182 Barnes Avenue. Discharge Tr. 72–76, June 14, 1999.

**5.** The bankruptcy court found that the filing contained "some errors, as well as numerous and consistent omissions," but determined that Cacioli believed them to be accurate and that "only a close reading of the Instructions would have revealed these omissions." *In re Cacioli*, 285 B.R. at 780.

plained satisfactorily all relevant losses or deficiencies. In re Cacioli, 285 B.R. at 783–784. The district court affirmed. Appellants challenge the rulings as to §§ 727(a)(3) and (a)(5).

## STANDARD OF REVIEW

A district court's order in a bankruptcy case is subject to plenary review, "meaning that this Court undertakes an independent examination of the factual findings and legal conclusions of the bankruptcy court." Goldman, Sachs & Co. v. Esso Virgin Islands, Inc. (In re Duplan Corp.), 212 F.3d 144, 151 (2d Cir.2000). We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Id. Under the clear error standard, the court of appeals may not reverse if the lower court's "account of the evidence is plausible in light of the record viewed in its entirety." Anderson v. City of Bessemer, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

## DISCUSSION

One of the central purposes of the Bankruptcy Code and the privilege of discharge is to allow the "honest but unfortunate debtor" to begin a new life free from debt. Grogan v. Garner, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In the interest of protecting creditors, however, § 727 requires the denial of discharge under ten enumerated circumstances. See 11 U.S.C. § 727(a). Even so, we have described § 727 as "impos[ing] an extreme penalty for wrongdoing," which "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1310 (2d Cir.1996) (quoting Bank of Pa. v. Adlman (In re Adlman), 541 F.2d 999, 1003 (2d Cir. 1976)).

In the instant case, Appellants object to the Debtor's discharge on the following two grounds:

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case . . .

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities . . . .

11 U.S.C. § 727(a)(3) & (a)(5) (emphasis added).

### A.  Failure to Maintain Records

"The purpose and intent of [§ 727(a)(3) ] of the Bankruptcy Act is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." In re Underhill, 82 F.2d 258, 260 (2d Cir.1936); see also Meridian Bank v. Alten, 958 F.2d 1226, 1230 (3d Cir.1992) (stating that the purpose of § 727(a)(3) is "to give creditors and the bankruptcy court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge"); In re Martin, 554 F.2d 55, 57–58 (2d Cir.1977) (stating that "[t]he denial of discharge serves both to deter inadequate record-keeping and to protect creditors whenever a failure to preserve records may have been motivated by fraud"). Section 727(a)(3) also ensures that "creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history." Meridian Bank, 958 F.2d at 1230.

■ To implement this record-keeping requirement, § 727(a)(3) provides a two-step approach. The initial burden lies with the creditor to show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained. *White v. Schoenfeld,* 117 F.2d 131, 132 (2d Cir.1941). If the creditor shows the absence of records, the burden falls upon the bankrupt to satisfy the court that his failure to produce them was justified. *White,* 117 F.2d at 132; *see also In re Sandow,* 151 F.2d 807, 809 (2d Cir. 1945) ("The statute puts the burden squarely upon the bankrupt who produces no financial records to produce at least a satisfactory explanation of their absence."); *Underhill,* 82 F.2d at 260 ("[E]ach case must stand upon its own facts with the inquiry always as to whether the bankrupt has sustained [the] burden of justification which the statute places upon him for his failure to keep adequate records.").

While the Bankruptcy Code does not define what constitutes justification for a failure to maintain records under § 727(a)(3), we have stated that whether a debtor's failure to keep books is justified is "a question in each instance of reasonableness in the particular circumstances." *Underhill,* 82 F.2d at 259–60; *see also Meridian Bank,* 958 F.2d at 1231 (stating that "[t]he issue of justification depends largely on what a normal, reasonable person would do under similar circumstances"). It is a "loose test, concerned with the practical problems of what can be expected of the type of person and type of business involved." *Morris Plan Indus. Bank of N.Y. v. Dreher,* 144 F.2d 60, 61 (2d Cir.1944).

In the instant case, there is no dispute that the Debtor failed to maintain personal, A & S, and partnership records from which his financial condition and business transactions might be ascertained. At issue is whether the Debtor sustained his burden by showing that he was justified in failing to maintain such records with respect to the Rosenberry Partnerships.[6] In ruling that the Debtor satisfied his burden of justification, the bankruptcy court focused on the following factors: (1) A & S was not a business so unusually complex as to compel the keeping of meticulous financial records;[7] (2) the Rosenberry Partnership records were created, maintained, and preserved by Rosenberry; (3) given the Debtor's lack of education and experience, he could not have been expected to keep sophisticated records; (4) there was no evidence of any fraudulent or otherwise egregious behavior; and (5) the Debtor's trial testimony was "frank, non-evasive, and highly credible." *In re Cacioli,* 285 B.R. at 783 (using the factors found in *State Bank of India v. Sethi (In re Sethi),* 250 B.R. 831, 838–39 (Bankr.E.D.N.Y. 2000)).[8]

---

**6.** Cacioli's personal and A & S debts amount to merely $257,300 out of Cacioli's total of $7,313,300 in debt. At oral argument, Appellants stated that their appeal is focused on Cacioli's justification for failing to maintain records relating to the Rosenberry Partnerships, and we deem any argument related to other debts waived.

**7.** The bankruptcy court did not appear to give this factor weight as it relates to the Rosenberry Partnerships, although its consideration would likely tilt in the opposite direction from its conclusion for A & S. Because the bankruptcy court concluded that Cacioli was too unsophisticated to maintain the Rosenberry Partnership records, it likely concluded, without expressly finding, that the partnerships were so complex as to compel the keeping of financial records.

**8.** In *Sethi,* the court considered eight nonexclusive factors to determine whether the debtor produced "adequate records" for a particular type of business:

Appellants argue that the bankruptcy court's application of the *Sethi* factors failed to adhere to the minimum standards of record-keeping prescribed by the Second Circuit in *Underhill,* 82 F.2d at 260 (stating that "[c]omplete disclosure is ... a condition precedent to the granting of [a] discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such [record-keeping] amounts to [a failure of complete disclosure]"). Further, Appellants argue that to the extent that the *Sethi* factors are consistent with Second Circuit precedent, the bankruptcy court's application was arbitrary.

First, we note that case law reflects some confusion as to the appropriate review of a creditor's objection to a failure to maintain records versus the debtor's burden of justifying such a failure. As noted by one bankruptcy court, "some courts seem to mix up the creditor's proof of whether the debtor failed to keep records with the debtor's proof of justification." *Strzesynski v. Devaul (In re Devaul),* 318 B.R. 824, 830 (Bankr.N.D.Ohio 2004). Some courts have determined whether a debtor maintained "adequate" records by looking to the nature of the debtor's business or income, the debtor's education and work experience, and the debtor's financial structure. *See Clean Cut Tree Serv., Inc. v. Costello (In re Costello),* 299 B.R. 882, 898 (Bankr.N.D.Ill.2003). Other courts have looked to vastly similar factors to determine whether the debtor has shown "justification" for the absence of records under all of the circumstances of the case. *See Meridian Bank,* 958 F.2d at 1231. Thus, "the two standards tend to become conflated and confused, which is problematic because different parties have the burden of proof on the statutory elements of lack of records and of justification." *In re Devaul,* 318 B.R. at 831.[9]

We think that Appellants' argument likewise conflates the inquiries as to record-keeping and justification. We do not read *Underhill's* "complete disclosure" requirement to prevent an honest debtor from showing justification, even if the absence of records hinders complete disclosure. *See Martin,* 554 F.2d at 57–58 (stating that "where records have been lost or destroyed through no fault of the bankrupt, any prophylactic function to be performed by § [727(a)(2)] becomes minimal and is outweighed by the Bankruptcy Act's

1. Whether the debtor was engaged in business, and if so, the complexity and volume of the business;
2. The amount of the debtor's obligations;
3. Whether the debtor's failure to keep or preserve books and records was due to the debtor's fault;
4. The debtor's education, business experience and sophistication;
5. The customary business practices for record keeping in the debtor's type of business;
6. The degree of accuracy disclosed by the debtor's existing books and records;
7. The extent of any egregious conduct on the debtor's part;  and
8. The debtor's courtroom demeanor.

*In re Sethi,* 250 B.R. at 838, (citing *Krohn v. Frommann (In re Frommann )*, 153 B.R. 113,

117 (Bankr.E.D.N.Y.1993)). The bankruptcy court decided the justification issue based upon the record as a whole and with "particular, *though not exclusive,* reference to *Sethi* factors 1, 4, 7 and 8." *In re Cacioli,* 285 B.R. at 783 (emphasis added).

9. The bankruptcy court's decision in this case reflects such a conflation. Here, the bankruptcy court claimed it was applying the eight-factor test in Sethi for adequacy of the records rather than a separate test for justification. In re Cacioli, 285 B.R. at 783. Despite the words of the bankruptcy court, ultimately it applied the factors of the adequacy test that correlated with factors related to justification and, thus, performed a proper analysis of justification.

general policy in favor of giving the bankrupt a fresh start").

■ We recognize that the appropriate inquiry as to justification should focus on the debtor's stated justification for failing to maintain records. In *Meridian,* the Third Circuit provided a list of factors for considering justification similar to the test for the adequacy of records:

> the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice.

*Meridian Bank,* 958 F.2d at 1231. We agree that an inquiry into such factors is appropriate to the extent that the factors are relevant to the debtor's stated justification. *See, e.g., Floret, L.L.C. v. Sendecky (In re Sendecky),* 283 B.R. 760, 764 (8th Cir. BAP 2002) (finding that the debtor was justified in not maintaining records for his small business because he was poorly educated, unsophisticated and had little business experience); *Grange Mut. Ins. Co. v. Benningfield (In re Benningfield),* 109 B.R. 291, 293 (Bankr.S.D.Ohio 1989) (finding that medical problems arising from an auto accident justified the debtor's failure to maintain records); *G & J Invs. v. Zell (In re Zell),* 108 B.R. 615, 627 (Bankr.S.D.Ohio 1989) (finding that an unsophisticated businesswoman was justified in relying on a bookkeeper to maintain books and records); *Energy Mktg. Corp. v. Sutton (In re Sutton),* 39 B.R. 390, 398 (Bankr.M.D.Tenn.1984) (finding that a self-employed debtor with very little formal education did not need to keep records that were "a paragon of clarity" for his business); *Hunter v. Kinney (In re Kinney),* 33 B.R. 594, 596 (Bankr.N.D.Ohio 1983) (finding that the debtor lacked the ability or knowledge to establish or maintain a bookkeeping system for real estate business). In particular, we consider the Ninth Circuit's holding in *Cox v. Lansdowne (In re Cox),* 904 F.2d 1399, 1403 (9th Cir.1990) ("*Cox I* "), that one partner's reliance on another partner's record-keeping "is relevant in determining 'justification' under § 727(a)(3)." *Id.* (remanding the case to the bankruptcy court to consider a spouse's reliance on her husband as a justification for her failure to keep records).

■ Here, Cacioli asserted that he failed to maintain records as to the Rosenberry Partnerships because he relied on Rosenberry to maintain the partnership records. As partners, Cacioli and Rosenberry share a duty to keep partnership records. *See Malloy v. Goldstein (In re Goldstein),* 123 B.R. 514, 526 (Bankr. E.D.Pa.1991) (finding that a partner whose primary duty is to solicit business duty has a shared duty to keep records). In *Cox I,* however, the court stated that partners with a shared duty "usually delegate responsibilities, including record keeping, among themselves," and that a partner's reliance on that delegation is relevant to justification. *Cox I,* 904 F.2d at 1403. The court reasoned:

> In the context of record-keeping, the only way for one to be certain that proper records are being kept is to maintain separate records of all transactions. We believe Congress included the "justification" exception, at least in part, to prevent this result when the delegation occurs between or among persons with a shared duty.

*Cox I,* 904 F.2d at 1403 n. 4. We agree with the Ninth Circuit's reasoning, and we conclude that Cacioli's stated reliance on Rosenberry's record-keeping is relevant to the justification question in this case. *See Beneficial Mortgage Co. v. Craig (In re Craig),* 140 B.R. 454, 458–59 (Bankr.

N.D.Ohio 1992) (granting discharge to a debtor who reasonably relied upon his sister-in-law's assurance that she would maintain business records).

■ For our review of Cacioli's reliance justification as to the partnership records at issue, we find instructive *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294 (9th Cir.1994) (appeal from the bankruptcy court's decision on remand from *Cox I*) ("*Cox II*").[10] In *Cox II*, the court looked to the following factors: (1) intelligence and educational background; (2) experience in business matters; (3) the extent of involvement in the businesses for which discharge is sought; (4) reliance on a partner to keep records, including whether there was a reasonable belief that records were being kept; and (5) any record-keeping or inquiry duties imposed upon the partner by state law.[11] *Cox II*, 41 F.3d at 1297–98. There, the court focused closely on whether the partnership had a clear division of partnership roles and whether the debtor ignored warning signs that records were not being properly kept, and the court found that it was reasonable for the debtor to rely upon her partner. *Id.* at 1300.

From our review of the record and applying these standards, we conclude that it was reasonable for Cacioli to rely on Rosenberry to maintain the partnership records: Cacioli testified that Rosenberry was assigned the responsibility of record-keeping because Cacioli had no formal business or finance training, while Rosenberry had significant experience. Thus, Cacioli's role in the partnerships was limited to locating investment properties, and Rosenberry was primarily responsible for

the direction of the financial side of the business, day-to-day management, and maintenance and custody of the partnerships's books and records. Further, Cacioli testified that he had no knowledge or awareness that Rosenberry was not maintaining records and the record reflects no warning signs from which Cacioli should have known that Rosenberry was not maintaining the records. Finally, apart from and beyond Cacioli's lack of education or experience, the bankruptcy court found Cacioli's testimony to be frank, nonevasive, and highly credible, and we have no basis to disagree with the bankruptcy court as to these findings.

Accordingly, we conclude that under all of the circumstances of the case, Cacioli was justified in relying on Rosenberry to maintain records under § 727(a)(3).

### B. Failure to Explain Deficiency of Assets

■ In order to obtain a denial of discharge under § 727(a)(5), first, the creditor must establish a loss or deficiency of assets. *See Caolo v. McGovern (In re McGovern)*, 215 B.R. 304, 307 (Bankr. D.Conn.1997). If the creditor makes such a showing, the debtor has an opportunity to explain the whereabouts of the assets. *Id.* As long as the debtor's explanation is convincing and not rebutted, there is no need for documentary corroboration. *See Krohn v. Cromer (In re Cromer)*, 214 B.R. 86, 97 (Bankr.E.D.N.Y.1997) (stating that "as long as debtor's explanation convinces the judge that the debtor has not hidden or shielded assets, corroborating evidence

---

**10.** We find *Cox II* instructive even though the partners in *Cox II*, unlike the partners here, were a married couple. The marital relationship was not the determinative factor for the decision in *Cox II*. See *Cox II*, 41 F.3d at 1297–98.

**11.** The court also looked to the status of the marital relationship, a factor not applicable in this case. *Cox II*, 41 F.3d at 1297–98.

by way of documentation is not necessary in every instance").

In the instant case, the bankruptcy court concluded, without citation, that the Debtor's trial testimony, "more than satisfactorily explained all relevant aspects of his financial history and condition."[12] *In re Cacioli*, 285 B.R. at 784. Appellants argue that the bankruptcy court erred because the Debtor failed to adequately explain the value of his partnership interests and the value of the consideration he received in exchange for divesting himself of those interests (i.e., several parcels of real property).

Based on our review of the trial testimony, we cannot say that the bankruptcy court's ruling was clear error. The Debtor testified that he divested himself of his partnership interests during a significant real estate downturn. Further, he testified that in exchange for his divestiture he received six properties, which eventually were either returned to the partnerships or foreclosed upon. The bankruptcy court found that the Debtor's testimony was credible, and we see no record evidence to the contrary. Based on the record evidence, we find it plausible that the value of Cacioli's properties diminished to the point where they no longer had value for unsecured creditors.

## CONCLUSION

For the foregoing reasons, the judgment of the district court upholding the bankruptcy court's judgment in favor of the Debtor is AFFIRMED.

---

12. The bankruptcy court stated that Plaintiffs could meet their burden of showing a loss or deficiency of assets merely by pointing to the Debtor's bankruptcy schedules, but the court declined to hold that such a showing would be sufficient to warrant denial of discharge based on its conclusion that the Debtor provided a satisfactory explanation. *In re Cacioli*, 285 B.R. at 784.