In re Hunter W. SMITH, Debtor.

The Cadle Company and D.A.N. Joint Venture, a Limited Partnership, Plaintiffs,

v.

Hunter W. Smith, Defendant.

Bankruptcy No. 99–32902 (ASD).
Adversary No. 00–3049.

United States Bankruptcy Court,
D. Connecticut.

Sept. 27, 2006.

Edward P. Jurkiewicz, Edward P. Jurkiewicz, LLC, Hartford, CT, for Plaintiffs.[1]

James C. Graham, Pepe & Hazard LLP, Hartford, CT, for Defendant.

## MEMORANDUM OF DECISION SUPPLEMENTING ORAL BENCH RULING ON COMPLAINT TO DENY DISCHARGE

ALBERT S. DABROWSKI, Chief Judge.

### I. BACKGROUND

Hunter W. Smith (hereafter, the "Debtor") commenced the instant bankruptcy case by the filing of a voluntary petition under Chapter 7 of the United States Bankruptcy Code, upon which relief was ordered. Thereafter Ronald I. Chorches (hereafter, the "Trustee") was appointed as trustee of the resulting bankruptcy estate. On March 1, 2000, The Cadle Company and D.A.N. Joint Venture, A Limited Partnership (hereafter, the "Plaintiffs") initiated this adversary proceeding through the filing of a multi-count complaint seeking to deny the Debtor his bankruptcy discharge pursuant to Bankruptcy Code Sections 727(a)(2)(A), (2)(B), (3), (4)(A), (4)(B) and (5) (hereafter, the "Original Complaint").[2]

On May 14, 2003, upon the Plaintiffs'

---

1. Appearances on behalf of the Plaintiffs by Edward C. Taiman, Jr., Esq., Sabia & Hartley, LLC, 190 Trumbull Street, Suite 202, Hartford, CT 06103–2205, and Paul M. Gaide, Esq., 713 Lovely Street, Avon, CT 06001, were withdrawn and terminated on July 2, 2003 and August 23, 2004, respectively. At trial, Attorney Gaide was called as a witness by the Plaintiffs and testified without objection by the Debtor–Defendant.

2. The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(J). Venue is appropriate in this District pursuant to 28 U.S.C. § 1409(a).

*Consensual Motion to Amend Complaint* [3] (hereafter, the "Consensual Motion"), Doc. I.D. No. 89, the Court accepted and docketed an *Amended Complaint Objecting to Discharge* (hereafter, the "Complaint"), Doc. I.D. No. 90, seeking to deny the Debtor his bankruptcy discharge on a more limited basis pursuant to Bankruptcy Code Sections 727(a)(2)(A) and (4)(A). The Complaint alleges that the Debtor, with intent to hinder, delay and/or defraud a creditor, transferred funds to a bank account maintained and held solely in the name of his spouse, Rita K. Smith, see Section 727(a)(2)(A), Complaint ¶ 4, and testified falsely at a Section 341 meeting of creditors, see Section 727(a)(4)(A), Complaint ¶ 5.

Trial on the Complaint was held before the Court commencing on August 23, and concluding on August 30, 2004, during which time the Court heard the testimony of nine witnesses, received into evidence voluminous documentary exhibits, including, *inter alia*, a 553–page transcript of the

Plaintiffs' examination of the Debtor pursuant to Fed. R. Bankr.P. 2004, Exhibit N, and considered facts without substantial controversy determined pursuant to Fed. R.Civ.P. 56(d).[4] On August 30, 2004, following the closure of the evidentiary record, the parties elected to argue the matter in lieu of submitting written proposed findings of fact and conclusions of law, following which the Court overruled the Plaintiffs' objections to the entry of a discharge, ordered that a discharge enter forthwith,[5] and retained jurisdiction to enter supplemental written findings of fact and/or conclusions of law.

The Court's immediate oral bench ruling at the close of evidence and argument was (a) prompted and justified by the dearth of credible evidence establishing the requisite intent of the relevant statutes, and (b) intended to relieve the Debtor of the burden of further unwarranted trauma associated with any delay in ruling, in light of the fact that the Debtor, in addition to the trial, had endured, *inter alia*, what ap-

---

**3.** The *Consensual Motion* noticed the Plaintiffs' election "not to pursue" relief under Sections 727(a)(2)(B), (3), (4)(B) and (5) as requested in the Original Complaint, thereby abandoning claims that the Debtor, *inter alia*, improperly transferred property of the estate after the petition date, concealed, destroyed or failed to keep information concerning the Debtor's financial condition, presented or used a false claim, and failed to explain satisfactorily a loss of assets, or deficiency of assets, respectively.

**4.** On June 19, 2003, the Plaintiffs filed a *Motion for Summary Judgment*, Doc. I.D. No. 99, seeking the entry of judgment under Bankruptcy Code Section 727(a)(2)(A). On April 20, 2004, this Court denied that Motion. However, because both parties complied fully with Rule 56(a) of the Local Civil Rules of the United States District Court for the District of Connecticut (requiring detailed statements of material fact from each party to a summary judgment motion) this Court, on August 19, 2004, entered an *Order Pursuant to Fed. R.*

*Civ. P 56(d)*, made applicable to this proceeding by Bankruptcy Rule 7056, Doc. I.D. No. 134, stating facts which exist without substantial controversy.

**5.** As of the date of this Memorandum of Decision no discharge order has entered. *See Plaintiffs' Motion for Order Pursuant to Bankruptcy Rule 8005* (hereafter, the *"Motion for Stay"*) (seeking to stay entry of the Discharge Order), Doc. I.D. No. 141, and *Debtor/Defendant's Opposition to Motion for Stay ...* (hereafter, the *"Opposition to Motion for Stay"*), Doc. I.D. No. 151, scheduled for a hearing on October 6, 2004, but marked "off" on that date. In light of this Memorandum of Decision and the Judgment entering simultaneously herewith, a hearing shall be held on the *Motion for Stay* and *Opposition to Motion for Stay* on Wednesday, October 11, 2006 at 10:00 AM at the United States Bankruptcy Court, Connecticut Financial Center (18th Floor), 157 Church Street, New Haven, Connecticut.

pears to the Court to be (i) an overly broad Original Complaint,[6] *see* footnote 3, *supra*, (ii) dilatory and obstructive discovery tactics, *see, e.g.*, Order dated October 26, 2000,[7] Doc. I.D. No 41, and (iii) three wearisome days of a contentious Rule 2004 Examination attended by an overly broad, and relentless, even mind-numbing interrogation, including ambiguous questions,[8] all designed to unfairly trap the most stalwart deponent into inconsistencies.[9]

## II. DISCUSSION

### A. Burden and Standard of Proof.

The relief of a bankruptcy discharge is not an absolute right, but rather, a privilege accorded only to debtors who conduct their financial affairs with honesty and openness. Despite this limitation on the discharge right, the law carries a "presumption" in favor of the debtor in discharge contests. This debtor-inclination derives from the observation that the deni-

**6.** The Original Complaint averred a potpourri of allegations ultimately withdrawn by the Plaintiff, including the patently preposterous assertion that the Debtor should be denied his discharge for failure to list as an asset on Schedule B his "pet dog", Original Complaint, p. 10, ¶ 21, prompting the Debtor's counsel to remark:

> It is a terrible thing to live for four or five years with the kind of debts that Mr. Smith had incurred, not knowing if you're ever going to get out from under. It's a particularly terrible thing if you're the kind of person as I think Mr. Smith has demonstrated he is. He isn't trying to skin anybody: he wasn't trying to gain anything: he wasn't trying to pull a fast one. He had, if anything, the misfortune of having a creditor named The Cadle Company who came after him for everything from the household account and the household and business accounts to the now infamous and, hopefully, never again to be seen in this Court or any other court around here that does bankruptcy, failure to list Buddy, the dog....

Tr., August 30, 2004, p. 218.

**7.** Granting the Debtor's application for an award pursuant to Fed. R. Bankr.P. 7037(a)(4), finding *inter alia*, that resistance of the Plaintiffs and their counsel to the discovery sought by the [Debtor] was not substantially justified, and awarding the Debtor reasonable costs of $14,396.00 in attorney's fees and and $578.65 in disbursments.

**8.** *See, e.g.*, Tr. August 30, 2004 at p. 155, line 16–page 158, line 2 (Discussion of Attorney Gaide's trial testimony admitting "he didn't paraphrase accurately", leading the Court to observe "It's mass confusion based upon what I call a shotgun approach where every-

thing in the world is being laid on the table by Mr. Gaide in a rather aggressive way, and we end up with a convoluted record, some 553 pages long in the form of a 2004, which I find to be of little help because [Gaide's] reference back just clouds the issue; it doesn't clarify it").

**9.** *See, e.g.*, closing remarks of Debtor's counsel, (adopted by the Court, *see* Summary and Conclusion, *infra*.) ("[Cadle] put this man through three days and 500 pages of abusive examination. Your honor was very nice when he talked about it, but you know as well as I do that what went on in that room: Wrong. It was intended to intimidate, and it had that effect". Tr. August 30, 2004, Page 205, line 19–25. "Sometimes you only see what you want to see, and what Cadle has done from day one is seen only what it wants to see. * * *[Sentence intentionally omitted. *See* footnote 13, *infra* ]* * *. While in the Courtroom, we invited Mr. Gaide to show us what the predicate for the statement that he tried to shove into [the Debtor's] mouth and [the Debtor], unfortunately, was a little bit too accommodating, so we asked, where's the predicate, where is that statement. * * *[Phrase intentionally omitted. *See* footnote 13, *infra* ]* * * ... and Mr. Gaide couldn't find it because it doesn't exist and it never did. You put somebody through that kind of examination, chances are some people are going to say things; there going to believe the person asking the questions knows all and if they say it, it must be true. You know what? It's not fair. I can do that. I'm not great at this, but I can do that to pretty much anybody, and I've seen it done, and it isn't pretty, and it isn't right, but it's no reason to take somebody's discharge away." *Id.*, Page 211, line 16–page 212, line 15).

al of a discharge "imposes an extreme penalty for wrongdoing". *In re Chalasani,* 92 F.3d 1300, 1310 (2d Cir.1996). Thus, Bankruptcy Code Section 727(a) "must be construed ... 'liberally in favor of the bankrupt' ". *Id. (quoting In re Adlman,* 541 F.2d 999, 1003 (2d Cir.1976)). Consistent with the foregoing, the party objecting to the granting of a discharge bears the ultimate burden of persuasion by a preponderance of the evidence at trial. Fed. R. Bank. P. 4005. Cf. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

## B. Applicable Substantive Law.

Through the Complaint the Plaintiff seeks to deny the Debtor his discharge pursuant to Bankruptcy Code Sections 727(a)(2)(A) and (a)(4)(A). Bankruptcy Code Section 727 provides in pertinent part as follows:

(a) The court shall grant the debtor a discharge, unless—

\*    \*    \*    \*    \*    \*

(2) the debtor, with *intent to hinder, delay, or defraud* a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the filing of the petition ...; [or]

\*    \*    \*    \*    \*    \*

(4) the debtor *knowingly and fraudulently,* in or in connection with the case—

(A) made a false oath or account;

11 U.S.C. § 727(a) (1999) (emphasis added).

*Analysis of Section 727(a)(2)(A)*

■ In order to prevail on an objection to discharge under Section 727(a)(2)(A), a plaintiff must prove that the subject act or undertaking:

(i) involved concealing, destroying, transferring, or removing the debtor's property, or permitting any of these acts to be done;

(ii) *was performed with actual intent to hinder, delay or defraud* a creditor; and

(iii) was done by the debtor within one year prior to the commencement of the case;

*See, e.g., In re Maletta,* 159 B.R. 108, 115–16 (Bankr.D.Conn.1993).

■ In the present proceeding the appropriate focus is squarely upon the Debtor's state of mind at the time of the undisputed transfers which are the subject of the Complaint;[10] *i.e.,* did the Debtor *intend* to hinder, delay or defraud the Plaintiff or any other creditor. As noted by the Court during the oral bench ruling of August 30, 2004, Tr. at 227 –229, in view of Plaintiffs' failure to meet their burden of establishing the requisite "intent to hinder, delay or defraud" under Section 727(a)(2)(A), the Debtor was entitled to a discharge. Upon a thorough review of the evidentiary record the Court remains completely satisfied that at no time did the Debtor act with the level of scienter necessary for discharge disqualification under Code Section 727(a)(2). Notwithstanding additional supportive testimony,[11] the

---

**10.** These transfers consist of wage payments to the Debtor from Paul Pizzo Architects, P.C. and corresponding Debtor deposits to a Rita K. Smith Account throughout the one-year period preceding the petition date, to wit:

**11.** In relation to both "counts" of the Complaint the Court (i) credits the supportive tes-

Court finds the trial testimony of the Debtor and his spouse to be entirely credible and, standing alone, dispositive of this critical issue.

*Analysis of Section 727(a)(4)(A)*

■■ In order to deny discharge under Section 727(a)(4)(A), the Plaintiffs must establish that:

(i) the debtor made a statement under oath;

(ii) such statement was false;

(iii) the debtor knew the statement was false;

(iv) *the debtor made the statement with fraudulent intent;* and

(v) the statement related materially to the bankruptcy case.

*E.g., In re Aiello,* 173 B.R. 254, 257 (Bankr.D.Conn.1994); *see also In re Maletta,* 159 B.R. 108, 112 (Bankr.D.Conn. 1993). Statements made in a petition and schedules are within the scope of § 727(a)(4), and statements made during Bankruptcy Rule 2004 examinations, or in connection with Section 341 testimony, are also covered. *E.g., Maletta,* 159 B.R. at 112; *In re Kilson,* 83 B.R. 198, 202 (Bankr. D.Conn.1988).

■ As with the Section 727(a)(2)(A) analysis above, to resolve the Plaintiff's claim under Section 727(a)(4)(A) the Court need look no further than the element of fraudulent intent. As noted by the Court

during the oral bench ruling of August 30, 2004, Tr. At 227 –229, in view of Plaintiffs' failure to meet their burden of establishing the requisite "knowing and fraudulent" state of mind under Section 727(a)(4)(A), the Debtor was entitled to his discharge. Upon a thorough review of the evidentiary record the Court remains completely satisfied that at no time did the Debtor act with the level of scienter compelling discharge disqualification under Code Section 727(a)(4)(A). Notwithstanding additional supportive testimony,[12] the Court finds the trial testimony of the Debtor, standing alone, to be entirely credible and dispositive of this critical issue.

## III. SUMMARY AND CONCLUSION

The Plaintiffs failed to meet their burden to establish that the Debtor acted with the requisite illicit intent of Section 727(a)(2)(A) or (a)(4)(A). The oral bench ruling of August 30, 2004, Tr. 222–231, supplemented by this Memorandum of Decision, and the August 30, 2004 argument of counsel for the Debtor, Tr. 198–221, which the Court finds fully supported by the evidentiary record, and adopts as its own[13], shall constitute this Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr.P. 7052.

A separate Judgment in favor of the Debtor–Defendant shall enter simultaneously herewith.

---

timony of Attorney Neil Crane, Attorney Richard Coan, Mrs. Hunter W. Smith (no relation to the Debtor) and (ii) notes the testimony of Attorney Paul Gaide acknowledging the ambiguous nature of certain relevant questions asked by him during the Rule 2004 examination. *See* fn. 9, *supra.*

**12.** *See* fn. 11, *supra.*

**13.** The Court adopts as its own the closing argument of the Debtor/Defendant's attorney

with the sole exception of the sentence, "Now, I have to read these things from time to time because I have the privilege of ... being in state court from time to time, but that's what happened", found at page 208, lines 16–20, of the August 30, 2004 transcript, the sentence "And, when they didn't see what it wants to see, sometimes it just made it up", found at *Id.* page 211, lines 19–20, and the phrase "I knew it didn't exist; we all knew it didn't exist;" found at *Id.* page 212, lines 2–3.

| Debtor's Paul Pizzo Architects, P.C. pay stub date | Net Pay | Rita K. Smith Account Deposit Date | Deposit Amount |
|---|---|---|---|
| 07–02–98 | $ 2,810.76 | 07–02–98 | $ 2,810.76 |
| 07–16–98 | $ 2,810.76 | 07–17–98 | $ 2,810.76 |
| 07–30–98 | $ 2,810.76 | 07–31–98 | $ 2,810.76 |
| 08–13–98 | $ 2,841.53 | 08–17–98 | $ 2,841.53 |
| 09–10–98 | $ 2,841.53 | 09–14–98 | $ 3,041.53 |
| 10–08–98 | $ 2,841.53 | 10–09–98 | $ 2,841.53 |
| 10–23–98 | $ 2,841.53 | 10–26–98 | $ 2,841.53 |
| 11–06–98 | $ 2,888.44 | 11–09–98 | $ 3,155.23 |
| 11–20–98 | $ 2,932.30 | 11–23–98 | $ 2,932.30 |
| 12–03–98 | $ 2,932.30 | 12–04–98 | $ 2,932.30 |
| 12–17–98 | $ 2,932.30 | 12–17–98 | $ 2,932.30 |
| 02–04–99 | $ 1,569.34 | 02–05–99 | $ 1,569.34 |
| 02–19–99 | $ 1,906.75 | 02–22–99 | $ 1,906.75 |
| 02–26–99 | $ 1,889.00 | 03–01–99 | $ 1,889.00 |
| 04–08–99 | $ 876.74 | 04–12–99 | $ 876.74 |
| 04–21–99 | $ 1,285.19 | 04–23–99 | $ 1,285.19 |
| 04–22–99 | $ 2,155.38 | 04–27–99 | $ 2,155.38 |
| 05–07–99 | $ 1,942.27 | 05–10–99 | $ 1,942.27 |
| | $43,108.41 | | $43,575.20 |